IIemiuiilu, Cxt. if-
The question as to the jurisdiction of the court was not contested by the appellants in the argument; and it will bo sufficient to say that there was no error iu overruling- tlie exception. The District Court", independent of its general and enlarged powers, has express authority to take cognizance of suits"instituted to contest the validity of wills. The only objection to 1 his authority is that it is found in the act to regulate the proceedings of the County Court in relation to tlie estates of deceased persons. (Art. 1112.) 'This would be a fatal objection (under the very peculiar provision of our constitution requiring- an act to embrace but one object, and that to be expressed in tlie title) were it not that tlie proceeding- in tlie District Court is to be regarded rather in tlie nature of an appeal or revision of tlie previous judgment: of tlie County Court admitting 'tlie will to probate. If it be an independent distinct proceeding, tlie exercise of tlie authority could not be supported under this provision of the statute; as, under this view of tlie character of tlie suit, the provision itself would be unconstitutional and void. The counsel for the appellees, in support of the jurisdiction, has referred to several adjudged eases which may be consulted. (3 Call It., 334; 11 La., 304; 10 Mart. B., 1.)
The important question is, whether the will, iu consequence of the alleged disinherison or pretermission of tlie appellees, is a nullity.
In most of tlie civilized nations of the world a restriction has been placed on the power of parents to deprive tlieir children of all share in their- estates. In ancient Borne tlie power of fathers over tlieir estates was unlimited They had also the absolute power of life and deatli over (heir sous. In process of time tlie children became entitled to a legal portion of the estates of their parents, of v. hioli they could not be deprived; and ibis is the rule, with various modifica! ions, very generally adopted by civilized nations. And such was the ancient rule of tlie'common" law as it stood iu tlie time of Henry the Second. By this, a man’s goods were to be divided into three equal parts, one for tlie lieirs, another for tlie wife, and tlie third was at bis own disposal. (2 Black, Coin., 402.) By imperceptible degrees this Jaw lias entirely changed; aud tlie deceased in Hiigland and in most of tlie States under the common law, can dispose, by will or "otherwise, of his estate. Under the laws of Spain in force at tlie passage of this act. tlie ascendants as well as descendants, and under some circumstances brothers and sisters, were forced heirs; and our statute was intended to enlarge the power of testamentary disposition iu cases *44 where there were no children, and to restrict the quality of forced heirs to-deseendants alone. (Art. 325.)
By the 13th section of the act concerning wills, Jannar'y 2Sth, 1840, (art. 32(13,) it is declared that no father or mother shall, hy his last will and test ament, disinherit liis or her child or children for any cause, except personal violence, committed by such child or children-on the testator or testatrix, at auy time after such child or children shall have arrived at the age of sixteen years, or for the attempt of such child or children, at any time after arriving ¡it said age, to slander or defame the said testator or testatrix, hy imputing- to them offenses punishable hy law, or ascribing to them acts calculated to bring- them into disgrace in the community; and such cause for disinherison must be assigned in the last will and testament; and if said child or children should afterwards and within four years after the will is admitted to probate, contend for his rights in the estate, by denying the existence of the said cause, it shall ho incumbent on the persons taking the estate to the exclusion of such child or children to prove that such cause did exist during the lifetime of the testator ; otherwise the will shall he declared void as to such child or children, and they shall be as capable of inheriting as if no such will liad been made.
By section loth of tlie same act (art. 32G5) it is provided that the act shall not ho so construed as to prevent auy parent from the free disposition of the one-fourth of liis property- hy last will or donation in last sickness.
The 8th section of the act concerning distribution of intestate’s estates, March 18th, 1848, (art. 509,) also has an influence on tlie question in this cause. It is to the effect that a child of a person dying intestate, having received from such intestate in his lifetime any property as' an advancement, and choosing to come into the partition of the estate, shall bring such advancement into-hotchpotch with the whole estate, real, personal, and mixed descended; and the party returning shell advancement shall thereupon he entitled to ids, her, or their proportion of the whole estate so descended.
These, it is believed, are all the provisions applicable to the questions under consideration; and it must he admitted that they furnish hut scanty materials for the solution of tlie difficulties theypresent. In other systems of jurisprudence, having provisions in relation to testamentary dispositions, of a kindred character witli our own, the rules in relation to the disinherison of forced heirs, the donation or bequest of the, disposable portion, donations hy way of anticipation of tlie legal portions of forced heirs, the collation of properly given to an heir in the lifetime of tlie testator or ini estate, occupy a large space. The varions-exigencies produced hy tlie diversified circumstances 'under which testators have to act in making- their wills can he met only hy regulations sufficiently numerous and comprehensive to embrace and operate on tlie various cases as they arise. Tlie. system of forced heirs and qualifications, in their favor, upon the testamentary power of the ancestor, is a portion of our former jurisprudence ; and, when it was retained, some of the ancillary provisions by which it was regulated, should have been preserved and others substituted. Without prolonging observations of this general character, we will proceed to-tlie questions directly involved in tlie cause.
The first point which presents itself is, whether the disposition in the will constituted such a disinherison as is reprobated by the statute. It is evident,, from the terms of the will, that the testator did not contemplate such exclusion of Ihe plaintiffs from his estate, as is included under the idea of disin-herison. The will exhibits no want- of parental affection, or failure, in the testator’s opinion, in bestowing upon tlie appe.lie.es out of his property (.lie portion to which, on principles of equality, they were legitimately entitled'. He bequeaths to them, it is true, none of the, property owned by him at his death not, it appears by the will, from forgetful uess or a want of parental tenderness, hut for tiie reason that he had already given to each and all of them liberally. If a parent have advanced largely to*some of his children, hy donations ¿/tier vivos, can it be contended that he must, if he make a will, distribute his rc- *45 mahiing property equally between all his children, without computing the .advancements against the legitimate portions to which, in the capacity oí forced heirs, they are entitled'? If such he the law, it is not commended to us hy any of the attributes of either justice or equality.
Under our former laws this point could have admitted o£ no question. There ■were some distinctions in that system between casual and simple donations in relation t o t ho question of t heir eollat ion in the distribution of an estate. These it is not necessary to consider. Parents under the fipanish law had the power of disposing of tiie fifth absolutely; and, as between their descendants, that of disposing also of the one-third of the remaining four-fifths. That is, they could bequeath to one or more of the children 1 ho whole, or a part, of the third; and as iheir power over the fifth was absolute, they might bequeaih both the third and the fifth to one, or more, of the children, in exclusion of others. This right ot disposition might be, exercised as well in the lifetime of the testator, by donation ¡.tice vicos, as by last will. Donations might also be made by a parent in hi iiwlime, by way of anticipation of the legal share to which his child as forced heir is entitled'after ¡¡is deatii. If the donations made were in the exercise of the over the disposable, portion of the estate, and if they did not exceed the disposable, quantum, they were not to be bnpuuid against t lie- legal portion of the donee. But, if they exceeded the disposable portion, the excess was to be, imputed as part of the lawful share; and if they exceeded the. disposable portion and also the legal share, the excess was to be restored to the estate.
It would be tedious to detail in full the various rales in relation to advancements, disposable portions, legitimate shares, and collation of goods under the Spanish law, and which are ¿11 applicable to testamentary as well as to intestate successions. They are treated at some length by Esericlie In his Dictionary, under the heads of Legitima Mejora, Colación de Bienes, and other articles, and in tlie, second volume of Febrero. (Fide Sala in chapter on Mejoras.) It will not be without advantage, however, to consider what would have been the rulo nuder the Spanish law in relation to the question immediately under consideration. Testing this will by that law, its provisions would not, if the declarations of the testator be true in fact, amount to a disinherison of the appellees. The will declares that he has advanced to the appellees liberally, and therefore lie. excludes them from a share, in his present property. Now, one of the requisites, one of the usual formalities in a Spanish will, is the setting forth specifically the donations made hy way of anticipating the share to which the heir so advanced would otherwise be entitled. (Febrero Mejicano, vol. 2, p. 21, sec. 41.) If the amount given by way of anticipation equaled the legal share the heir could not complain of any disposition made in the will. He had already received his legal quota. The testator was not hound, if lie had donated 1 ó him his legitimate share, to bequeath him any more. He was uot entitled under tlie law to a further bequest or gift; and therefore this will, in this particular, had the advancements in fact been made, would, tinder the laws of Spain, have been valid. Under those laws, the effect of a donation upon the legitimate share of the child was the same whether the succession were, testate or intestate. If lie claimed under a will, or where there was no will, the donations, if not intended as a part of the disposable portion, were computed against tlie legal share. The rules in lvlatiou to tlie collation of advancements, were tlie same in testate as in intestate successions.
It is admitted that under our laws tlie ruléis different; that there is no positive law requiring, where a parent makes a will, the children previously advanced to collate their donations before they can claim, under the will. Our laws relative to collations are applicable in terms only to cases of intestacy. But notwithstanding this defect in our laws, wo could not, without disregarding the principles of justice and the rules of equality between ehil-dren^whicli is manifestly tlie object of such high solicitude by our laws, admit that a parent wlio lias by donation given largely to a child, even far beyond the aggregate of his share and of the disposable portion, can be deprived of *46 tire power of distributing- equally between bis unprovided children the modicum of prox>orty that may be left to Mm. A claim by a child who may have received by donation three-fourths of his father’s property to au equal share of the remainder, with other children who have received nothing, would be too flagrantly unjust — too destructive of the real equality intended to be preserved' among heirs to all portions of the estate execiDt the disposable quantum to be tolerated for a moment in a court of justice.
Though the law in cases of testacy does not expressly specify the effect of donations previously made on the legitimate share of the donee; though it does not in terms require them to be collated, yet the spirit of our legislation in relation to successions generally will sanction the position that, where such donations have been made, the parent may in his will compute them against the legal portion of the donee in the estate. To illustrate the propriety of this rule, let us examine the effect of the judgment in this case. The will is pro-' nouuced null and void; and consequently, in conformity with law, the petitioners are entitled to come in for their snare of the intestate’s property as if no such will had been made. The estate, then, being- liable, under the 13th section of the act to distribution as in cases of intestacy, before the appel-lees could claim any share in it, tiiey must collate their advancements; and if they should be equal to their distributive portions they can claim nothing. Why, then, should the will be declared null without first ascertaining whether their advancements are equal to their legal portions? If they be equivalent, the setting aside of the will would operate no advantage to the appellees; they would be precisely in the situation in which they were left by the will. This excluded them from any share in the estate; and if their advancements amount to their legal portions they can receive nothing, though the will should be set aside. It is a legal axiom, that the law never does a vain thing. It will not cast a descent upon an alien; because it may be immediately divested. The powers of courts are to bo exercised for useful purposes, and not in nugatory acts; and nothing would be more futile than to set aside the will, if the condition of the appellees could not be altered, benefited, or affected by the act.
Where a child has been advanced by donations from the parent, in an amount equal to its legal portion as forced heir, we are of opinion that a will excluding such child from any share of the estate owned by the testator at the time of his death is not null; and that in case the will be attacked on the ground of exclusion of such heir, it is competent and becomes the duty of the court, proper issues having been made, to investigate llie facts in relation to the amount of advancements, and to sustain or set aside the will as the donations may or may not be equivalent to the legitimate portion of the donee in the estate.
The next question is, whether the disposition made by the testator of his property should in any event bo sustained for the one-fourth of his estate. And here, again, we are met by difficulties arising from the want of positive provisions of law on the subject. Where the right of testamentary disposition is restricted, as it is with us, it must frequently occur that a even when disposed to act in entire conformity with law, will exceed in his dispositions the authority conferred. He may not estimate accurately the amount of his property; and ids bequests may exceed, more or less, the amount of the disposable portion. Contingencies of this character have been provided for in the laws of Spain, of Louisiana, and, I presume, in those of other countries where the testamentary power is restricted, lly Ihc Civil Code {art. 1489) it is declared that any disposal of property, whether inter vicos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of forced heirs 'is not null but only reducible to that quantum.
The distinguished jurist Escriche, treating of Mejoras in ids Dictionary, says that when a father names one or more sons for his universal heirs, omitting or unjustly disinheriting- the others, or institutes them all for heirs, but leaving- one or some of them less than their corresponding share of the *47 inlieritano-', in such eases the sons instituted as heirs will not only receive their loglihn-ite. portion, hut also the third and fifth if tlie will contains the codiciliiiry clause.; anil those protermiltod or unjustly disinherited, or instituted for le ;s than their legitimate part, will receive only their strict legitimate portion, of which their father cannot deprive them. By the 20th law of Toro, which is lew 10, Tit. 7, Lib. 10, N. It., it is, among other matters, declared that if a parent shall give by donation iider vioos or by last will to any of his descendant property exceeding the third and fifth of his estate and the legitimate share of the child, the donation shall he good for the aggregate amount of these, and for no more. (Tide Escriche, verbo, Mejoba; Febrero, vol. 2, p. 1.)
Were provisions of this character to he found in our statutes the effect of an excessive bequest would not be doubtful. It would be good for the amount of the disposable portion; and if made in favor of a child, it would, in addition, bo valid for the legitimate share. Tlie question is, whether that effect can now be ascribed to it without violating tlie scope and intent of our legislation in relation to testamentary dispositions.
It must he remembered that restrictions on the testamentary power were infused into our system from the laws of Spain, and that a prominent provision of that and kindred systems of jurisprudence is, that the testamentary power io the extent of its rightful limits cannot be defeated under any circumstances whatever. It is immaterial under the Spanish code whether the testator exceeds his qualiiied power or not; whether lie gives the whole of his property lo one, excluding other heirs; whether he unjustly disinherits some and pretermits others; and though the will for these defects may he annulled, yet the bequest is valid to the extent of the testator’s rightful authority: that is, to tlie amount of the disposable quantum, and also of the legitimate portion; aud for Ihe excess of these the bequest is invalid. (Vide authorities above; 1 White, 111.)
Kocuniug to our present laws, we find the 13th section of the statute of wills declaring that in case of unjust disinherison the will shall he declared void, aud the child shall be as capable of inheriting as if no such will had been made. This, however, aud all other sections of this act, are qualified by the fifteenth section, which declares that the act shall not he so construed as to prevent any parent from tlie free disposition of the one-fourth of his property by his lu-t will and testament, or by donation in tlie last sickness. This last section from its terms controls every portion aud expression in the act; and every part of it must he in subordination to its intent and purpose. It is obvious, then, that tlie expression in the thirteenth section, that the illegally disinherited child shall he as capable of inheriting as though no such will had been made, cannot be, construed in all cases to give to tlie child the share to which it would have been entitled in case of intestacy. Though one or more of tlie children may have been unlawfully disinherited, and this may avoid the will, yet tlie testator may have in exact conformity with law bequeathed one-fourtli of his property to another child or to a stranger. In that event, the disinherited child could lay no claim to any of tlie property so bequeathed. Consequently, the right of such child to inherit as if no will had been made is qualified by ihe right of the parent to lawfully bequeath the one-fourtli of Ills property. This right is absolute. It is paramount to any right which his children as forced heirs may have to the properly; and though, when he attempts to unjustly pretermit or disinherit some of his children, they may assert aud maintain their claims to their legal portions of tlie estate, yet they cannot disturb any bequest which lie may have made in exorcise of Snell testamentary qualified power as is conferred on him by law. Tlie right, then, of an unlawfully disinherited heir to a share in the estate as if no will had been made cannot of itself defeat all bequests by the testator. It cannot render ineffectual a bequest for tlie one-fourth part: and tlie question is, when a bequest exceeds the one-fonrtli, can the pretennitlod or illegally disinherited heir claim that the whole of such bequest is void, or only the excess?
*48 Our statute declares that it shall not be so construed as to prevent a parent 'from freely disposing of oue-fourl.li of his property. Can an excessive bequest be held void for its whole amount, without impairing the unquestionable right of (.lie testator to dispose of the oue-fourth of the property embraced in that bequest ? His power over that fourth is plenary; nay, it is totally unrestricted; and the law prohibits any construction of the statute to prevent the freedom of its exercise. The law does not declare an excessive bequest to be null; nor does any principle require the authority given the testator to be construed strictly; nor justify the infliction of a penalty by declaring the whole bequest null, as well for the one-fourth over which the testator lias unlimited power, as for the excess beyond the fourth over which he has no power. If the power to dispose of the fourth be construed strictly, it can seldom bo carried into effect, unless the bequest he for a small amount, or in terms for oue-fourth of the estate. If several specific legacies be given, their value amounting to more than a four!h, will that annul each and ail of the legacies? Or, if a bequest be made of liorses or cattle amounting in tlie aggregate toa few dollars more than a fourth, will that vitiate the entire bequest, the ¡lower to give the grealer portion of which was perfectly absolute and no construction ivas (o prevail, against it? The legislature in tlie adoption of the statute, was fully apprised that bequests under powers of this character, in systems of jurisprudence then specially under their notice, were held valid to the extent of the power, however erroneous and excessive may have been its exorcise ; and, liad they intended that a bequest should not be sustained, unless 0110-fourtli and no more precisely, was given, it is very probable that there would have been some provision to that effect. The absence of any such is no argument in favor of a rigid construction ; but, on tlie contrary, raises a presumption that in the opinion of the none was
It is a universally recognized principle that the iutention of a testator, not conflicting with law, shall be carried into effect. Although ail excessive bequest is, as to its excess, illegal, yet it clearly designates tlie persons upon whom the testator desires his bounty to flow, and (lie statute not declaring such bequest to be null, and having given plenary authority to make a portion of it; does not tlie principle that tlie intention if possible, shall prevail, require that tlie legatee specified shall receive tlie bounty to the extent to which the law permits it to be made operative? Upon tlie whole, we are of opinion that a t.esla-mentary bequest, though it exceed the oue-fourtli of the estate, must, be held for that amount valid and effectual.
■Where a testator intends to pretermit some of the heirs on the ground of previous advancements lie should state these specifically; the validity of ills act depending, however, ultimately upon the existence in fact‘and tlie equivalent character of such advancements.
A question lias been made in the pleadings charging that a portion of tlie property bequeathed belonged to (.be community existing between (he, testator and his first wife. Unquestionably the will of the testator can operate, only on his own property, lie can neither the separate property of Ills wife or wives, nor her or their interests in their respective communities, though liis bequest of community property is valid to tlie extent of lib ini ('rest in that community. If, after the payment of all charges against the first community, there he any residuum, the appellees are entitled to tlieir respective shares provided they be not barred by prescription or oilier just cause.
Tlie defendant Elizabeth prays that, if a distribution of the estate be ordered, slid be protected in the communal rights. She is protected in these by law. She cannot bo deprived of them, neither by the will of her husband,'nor in any other mode; unless, indeed, she voluntarily renounce her rights, or the whole of tlie community property be consumed in debts. The will'in this case docs not, iu terms, propose to dispose of anything but tlie testator’s own estate. It does not intrench upon the separate, or community rights of cither of his ■wives, if any they had, which could now be enforced.'
This will may be valid as to all the appellees. It will most probably be so *49 as to "Mrs. Coe. It is objectionable in other respects. It bequeaths the whole of his estate to the wife for life, the remainder after the life estate to her children. These children are liis forced heirs. They cannot bo deprived of their legitimate portion; nor can they he postponed by the intervention of a life estate in that portion. This will is surrounded with so many difficulties that it might, perhaps, be to the advantage of all parties to regard it as null; though, of ¡ids, the parties are the competent as well as the best judges.
We are of opinion that this will is not null, for the alleged pretermission of the appellees; that its nullity as to them must depend upon facts in relation to alleged ad\an cements; and that if, on proof, they be found equivalent to their legitimate shares, the will be permitted to stand. And we are further of opinion Hint the bequest in the will is valid for the one-fourth of the prop-of the and it is ordered, decreed and that if the will he declared void as to the appellees or any one of them, this fourth, the debts being first paid, must be deducted from the mass of the property, ■and that the remainder, increased by such advancements as may be brought in, shall he partitioned according to the laws regulating the distribution of the estates of intestates.
Be,versed and remanded.
Note 17. — This case cited and approved, Vickery v. IIobbs, 21 T., 570.
Note 18. — Parvis v. Sherrod, 12 T., 140; Howze v. Howze, 14 T., 232; Little v. Birdwell, 21 T., 597; Becton v. Alexander, 27 T., 659.
Note 19. — Hagerty v. Hagerty, 12 T., 456.