FLOYD et al. v. SEAY et al. (No. 7383.)

(Court of Civil Appeals of Texas. Galveston. May 3, 1917. Rehearing Denied May 24, 1917.)

PARTITION ⊜⇒9(1)—ACT OF PARTIES—CONCLUSIVENESS.

A partition of property having been made between the children and widow of testator, by deeds from executor to the widow and by them to the children, on the theory that the will did not attempt to dispose of the widow's community interest, and having for years been acted on and acquiesced in by them with full knowledge of the facts, is binding on them, and estops the children from asserting against the widow's mortgagees an interest under the will in the lands which passed to her by the partition.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 26–31.]

Appeal from District Court, Madison County; S. W. Dean, Judge.

Action by M. D. Seay and others against James Floyd and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

J. M. Brownlee, of Madisonville, and Woods, King & John, of Houston, for appellants. Dean, Humphrey & Powell, of Huntsville, for appellees.

GRAVES, J. This suit was brought by M. D. Seay and others, as plaintiffs, against James Floyd and others, as defendants, on two promissory notes executed by two of the defendants, Hollan Floyd and Yetta Floyd, and to foreclose a deed of trust given by them and another defendant, J. W. Floyd, to secure the notes, upon three tracts of land, the first of which, and the only one involved in the controversy, is described as containing about 1,000 acres out of the Nunn and Stewart tract in the Isabella Townsend league in Madison county, Tex.

Plaintiffs alleged that Hollan Floyd had, on the 16th day of June, 1915, conveyed to James Floyd, Mary Cassidy, and L. H. Floyd, who are also defendants herein, a part of this tract No. 1; that by virtue of that deed, and otherwise and beyond the deed, the defendants James Floyd, Mary Cassidy, and L. H. Floyd were asserting claims to this tract of land, which claims were alleged to be subordinate to the deed of trust declared on; and foreclosure was sought as against all parties defendant.

Defendants James Floyd, L. H. Floyd, Mary Cassidy, the last joined by her husband, and Mrs. Hollan Floyd filed their answer, which, among other things, alleged that defendants James Floyd, Mary Cassidy, and L. H. Floyd (who were the children of G. A. Floyd, the deceased husband of defendant Hollan Floyd) held title to this 1,000 acres under the last will and testament of their deceased father, G. A. Floyd, in that, while this 1,000 acres had been originally the community property of G. A. Floyd and Hollan Floyd, he had by his will devised to his wife, Hollan Floyd, 640 acres of land out of his separate property, and had by the terms of his will undertaken to dispose of this 1,000-acre tract, along with other lands, as his separate and individual property to the three named defendants, James Floyd, L. H. Floyd, and Mary Cassidy, and that his widow, Hollan Floyd, had accepted under the terms of the will, whereby she had lost any claim she might have to the 1,000-acre tract, which under the will vested in the three named defendants; that, if Hollan Floyd had ever claimed or held any interest in this land, on or about August 10, 1910, she had by a deed, duly executed and delivered, conveyed it to L. H. Floyd, who held for himself and his codefendants, James Floyd and Mary Cassidy. They likewise declared this deed of trust a cloud upon their title to the land and prayed for its cancellation.

By a supplemental petition plaintiffs generally denied the allegations of defendants' amended answer, and further pleaded that the will of G. A. Floyd did not undertake to dispose of any interest in the community property of himself and wife, Hollan Floyd, other than his own one-half; that one H. B. Pruitt was made independent executor of the will and given full power to partition the

---

estate of G. A. Floyd among his legatees and devisees. The supplemental petition set out in full a list of the land therein alleged to have been the separate lands of G. A. Floyd, deceased, and also the community property of G. A. Floyd, deceased, and Hollan Floyd. It also alleged that subsequent to the probating of the will H. B. Pruitt, as executor, acting thereunder, and acting together with Hollan Floyd, made a partition of the community property, and that in that partition 1,213⅓ acres of land, a part of the Isabella Townsend survey, which included the 1,000 acres in question, was set aside to Hollan Floyd in satisfaction of her community interest in the lands of G. A. Floyd, deceased, and that the executor, joined by Hollan Floyd, set apart and deeded to each of the residuary legatees of G. A. Floyd, appellants herein, lands out of the community estate, specifically described, except that to Mary S. Floyd, now defendant Mary Cassidy, there was set apart lands out of the Musquez survey in Madison county, Tex., which lands were the separate property of the estate of G. A. Floyd, deceased. They further alleged that the lands so set apart and deeded to the said defendants were by each of them accepted; that they went into possession of the tracts of land conveyed to them respectively, all of them knowing that those tracts of land had been conveyed to them in full settlement of their interest under the will of G. A. Floyd, deceased.

By respective denials upon both sides issues were joined upon these matters. The trial was before a jury, and the court submitted three special issues: Nos. 1 and 2 upon whether or not the above alleged deed of August 10, 1910, from Hollan Floyd to L. H. Floyd, was ever executed and delivered, and whether it conveyed the 1,000 acres, and whether any of the plaintiffs in the suit had actual notice thereof before accepting the trust deed they sought to foreclose. No. 3 was as follows:

"Did the plaintiffs herein, or either of them, have any actual notice of any claim by the defendants Jim Floyd, Mary Cassidy, or Lemuel H. Floyd to the above 1,000-acre tract of land growing out of the claim that the land was held in trust by their mother, Hollan Floyd, under the deed from H. B. Pruitt, executor, introduced in evidence herein? And if you find that either of the plaintiffs had such notice, then state which of them had such notice."

The jury answered each issue, "No." The court thereupon, reciting the verdict, and further reciting that the court "found in favor of plaintiff all issues of fact raised by the pleadings and evidence and not submitted to jury," rendered judgment in favor of plaintiffs against Hollan Floyd and Yetta B. Floyd for $6,224.64, and further for $622.46 attorney's fees, with interest at 10 per cent. on the first sum and 6 per cent. on the second sum from judgment date, May 15, 1916, together with all costs; and it was further adjudged that the lien of the deed of trust, as it existed April 21, 1915, be as against each and all defendants foreclosed on the tracts of land described in plaintiffs' petition, including the 1,000 acres, more or less, out of the Isabella Townsend survey, first above described.

Defendants James Floyd, L. H. Floyd, Mary Cassidy, joined by her husband, and Mrs. Hollan Floyd, filed a motion for new trial, which was by the court on the 20th day of May, 1916, considered and overruled; defendants James Floyd, L. H. Floyd, Mary Cassidy, and husband, John Cassidy, excepting and giving notice of appeal to this court, which was later duly perfected.

Since neither of the parties against whom the money judgment was rendered have appealed, there is really but a single question involved upon this appeal, and that is presented by those against whom the judgment was alone one of foreclosure upon the 1,000 acres of land, and is as follows: Was this 1,000 acres of land properly subject to foreclosure, as against the claims of these appellants thereto, upon the deed of trust given thereon by other parties, and existing against it under the facts above detailed? Or did the appellants own the land at the time the other parties attempted to incumber it by the deed of trust, and hence was the attempt ineffective as against their title?

Since the jury, in answering special issues Nos. 1 and 2, found that the alleged deed of August 10, 1910, was never executed, the only remaining claim of appellants to the land is that urged under their assignments presented here, which may be thus epitomized:

That in his will George A. Floyd devised to his wife, Hollan Floyd, 640 acres out of his separate lands, and also certain personal property belonging to their community estate, consisting of horses, mules, cattle, furniture, farming utensils, etc., which she would not otherwise have been entitled to or obtained, and then, after bequeathing certain other community property to his children, concluded the will by saying:

"All the remainder of my estate, real, personal and mixed, not heretofore given, devised and bequeathed by me, as shown above, or not accepted and taken by any of the legatees and devisees under the foregoing provisions of this, my last will and testament, I here give, devise and bequeath unto my said children James Floyd, Joseph W. Floyd, Mary S. Floyd and Lemuel H. Floyd, to be equally divided between them share and share alike."

That the testimony shows that the defendant Hollan Floyd accepted under this will, and the property so bequeathed to her, and the terms of, statements in, and the words and phrases used in the will, with the special bequests, show conclusively that George A. Floyd treated the property, both separate and community, all as his own property. That his widow was thus put upon her election whether to accept under the will, or

claim her rights as survivor in the community property aside from the will. That, having so accepted, she was limited to the particular property specifically devised to her, and was bound by the disposition otherwise made in the will of the community property, which, in so far as it affects the 1,000 acres here involved, was that it passed under the quoted residuary clause to appellants.

These contentions are vigorously and ably presented throughout the brief of appellants; but, aside for the present from the terms of the will, we are unable to agree with them that the evidence showed any such acceptance by her as they contend it did. Upon the contrary, we think the uncontroverted proof showed that, instead of so accepting only the property specifically devised to her, she very promptly after the testator's death claimed and took possession of all her rights and interests in the community, independent of the will, and that she consistently maintained and never changed this attitude from the time of the testator's death in 1889 until she joined the appellants here—that is, throughout a period of nearly a generation—in the contrary position embodied in their above summarized contentions in this suit. The undisputed evidence admits of no other conclusion; indeed, the record likewise shows that the executor and the widow, from the inception of the administration of the estate under the will until its final partition and distribution through deeds from him to her and joint deeds from the two together to appellants, proceeded with no other idea than that she was thereby both claiming and receiving all her community rights, as well as such additional ones, if any, as were vested in her by the will. Nor was her action in claiming and holding the property received from both these sources inconsistent with her legal rights, provided, of course, that she did not accept the one in lieu of the other, as we have found the evidence conclusively showed she did not. There had been nothing to prevent her husband from willing her additional property to what she would have by virtue of her community rights, and was then nothing to prevent her acceptance of it.

We deem it unnecessary to detail the evidence supporting this conclusion, because the facts were uncontroverted. The 1,000 acres was community property, was so inventoried, listed, and treated by the executor, and so recognized by the widow and her children, the appellants here. Not only did the widow thus promptly claim her community interests, but the proof is equally uncontroverted that the complete partition by deeds of all interests and property disposed of under the will, as detailed in the above statement of the pleadings of appellees, was in fact made between her and the appellants, she being joined therein by the executor, who was expressly so authorized by the terms of the will, and that in furtherance of this agreed partition appellants severally accepted and went into possession of and used the land so deeded them, as likewise did their mother of the tract including the 1,000 acres in question so conveyed to her, and that this appropriation, possession, and use by each of them had continued, without a dissent or contrary claim, from the date of the partition deed, October 20, 1899, down until about the time this suit was filed, or at least until 1915.

We think, therefore, there was no question of fact for the court to submit with respect to the election vel non of the widow to take under the will, and that no error was committed in that respect, as is contended under the second and third assignments. Furthermore, it is our opinion that this partition, made, acted upon, and acquiesced in, under all the facts and circumstances and for the great length of time it was shown to have been, was binding upon all the parties thereto, and that appellants, with full knowledge of the facts, having so accepted, used, and enjoyed the lands allotted to them thereunder, cannot now be heard to question the validity thereof, and are estopped to claim any interest in the 1,000 acres in controversy, which just as effectively passed by the same partition to their mother. While the issues of fact relating to this partition and its acceptance, so fully joined in the pleadings, and upon which evidence was presented, were neither requested to be, nor were, submitted to the jury, they must be considered as found in favor of appellees; indeed, the judgment so specifically recites. It necessarily follows from these conclusions that in our opinion the trial court committed no error in rendering the judgment it did, and that all appellants' assignments must be overruled.

And since we think the conclusions reached upon the questions discussed determine the issues presented upon this appeal, without reference to how the specific provisions of the will should be construed, we deem it unnecessary to construe them; but, while unnecessary to the decision of the case, we may say that we do not think the will here under consideration contained any such clear and explicit language as evidenced an intention on the part of the husband to thereby dispose of his wife's interest in their community property, within the rules announced in the following authorities: Haley v. Gatewood, 74 Tex. 281, 12 S. W. 25; Moss v. Helsley, 60 Tex. 435; Smith v. Butler, 85 Tex. 126, 19 S. W. 1083; Crosson v. Dwyer, 9 Tex. Civ. App. 482, 30 S. W. 929; Sutton v. Harvey, 24 Tex. Civ. App. 26, 57 S. W. 879, affirmed in 94 Tex. 693; Parker v. Parker, 10 Tex. 83.

Finding no error in the judgment, it is in all things affirmed.

Affirmed.