## MINOR et al. v. HALL et al.    (No. 7914.)

(Court of Civil Appeals of Texas. Galveston. Nov. 16, 1920. Rehearing Denied Dec. 15, 1920.)

1. Wills ⚖➤639—Devise to daughter conditional on payment of burial expenses, etc.

Will in favor of testatrix's daughter, expressly stated to hold good if the daughter did as testatrix requested, *held* to have required the daughter to pay the burial expenses of tes-

tatrix, a debt due to a third person, and certain lien indebtedness against testatrix's home place, and to invest $100 for two grandchildren, as a condition precedent or subsequent to the passing of absolute title to the daughter.

2. Wills ⚖➤656—Devise to daughter held not to have required her to pay debts on granddaughter's property out of own money.

Will in favor of testatrix's daughter conditional on her paying all that was owed on a granddaughter's property "out of her money," in view of the context, *held* not to have required the daughter to pay the granddaughter's debts with the daughter's money.

3. Pleading ⚖➤246(1)—Filing of amended petition, attempting to submit to court cause of action over which it had no jurisdiction, properly refused.

In suit by a granddaughter of testatrix against a daughter, chief beneficiary under the will, to enforce the claim that the devise to defendant daughter was conditional on her making certain payments for plaintiff granddaughter, where the petition inferentially alleged that it was not the purpose of plaintiff granddaughter and her husband to attack the will as probated, the trial court properly refused to permit plaintiffs to file an amended petition, in substance a suit to set aside probate of the will and to contest its probate in the district court; the attempt being to submit to the district court a cause of action over which it had no jurisdiction.

4. Courts ⚖➤206(17¼)—An issue made and determined below requisite to jurisdiction of appellate court.

An issue must first be made and determined in the court of original jurisdiction before the jurisdiction of the appellate court can attach, and then only by appeal or certiorari.

5. Courts ⚖➤472(4)—District courts without original jurisdiction to annul county court's probate.

Despite Rev. St. 1879, art. 3213, under Const. art. 5, § 16, district courts have no jurisdiction to annul by original proceeding the action of a county court in probating a will.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Suit by Mary Belle Minor and another against Fannie Mott Hall and others. From judgment for defendants, plaintiffs appeal. Affirmed.

M. G. Cox and W. A. Morrison, both of Cameron, for appellants.

J. W. Lockett, of Houston, for appellees.

LANE, J. To show the nature of this cause, the proceedings prior to and upon the trial, and the judgment rendered from which this appeal is taken, we make the following statement:

On the 2d day of June, 1902, Mrs. Elizabeth J. Swain, a widow, purchased from Robert McElroy and wife lot 5, and fractions of lots 4 and 11, in block 261, on the south side of

---

Buffalo bayou in Houston, Harris county, Tex., fronting 62½ feet on Brazos street and 125 feet on Lamar avenue, together with all improvements situated thereon, which embraced a dwelling house, into which she moved with her family, and in which she resided as her home up to the time of her death in 1905. The consideration was $3,500 paid and contracted to be paid as follows: $2,000 cash, the assumption of an indebtedness of $953 due by the vendor to the Mutual Building & Loan Association, which was a lien on the property, and by executing her note for $547 to said vendor. At the date of the acquisition of the property she had two children, Fannie, the appellee, and Mertie, the deceased mother of Mary Belle Minor, the appellant; appellant being the only child of Mertie at the time of her death, appellant at such time being an infant. Appellee Fannie, now Mrs. Hall, and the granddaughter, appellant, now Mary Belle Minor, were the only heirs of Mrs. Swain.

Appellant Mary Belle Minor, before the death of Mrs. Swain, inherited from her deceased father lots 3, 4, and 5, in block 578, in the city of Houston, with improvements thereon, and she also inherited from her father lots 9 and 10 in block B, each being subject to a mortgage, one for $300 and the other for $275.

On the 29th day of September, 1903, Mrs. Swain, the day before she took an anticipated trip to Bellville in Austin county, Tex., wrote the following instrument, or instruments:

"September 29, 1903.

"I want my beloved child, Fannie Mott Swain, to have our home place & all my personal property, my life insurance $1,000.00 to pay off my debts, such as burial expenses, Mrs. M. Levy her $500.47, $100 to put away for my grandchild, Mary Bell Meek, to be given her when she is 18 years old, may be invested for her; $100 to be invested for my niece, Mertie Alice Phillips, to be given her when 18 years old. Any money or land I may inherit to be given to my beloved child, Fannie. I request her always to look out for her niece, Mary Bell Meek. The debt that is owing in the loan Fannie can pay herself, & then the home place, corner of Lamar & Brazos, is to be hers, she to be appointed administratrix without bond.

"Mrs. Lizzie J. Swain."

"September 29, 1903.

"This is to hold good if Fannie does as I request her.

"Pay all that is owed on Mary's property out of her money, keep up her place, taxes, insurance and the rest you will have to use for her. After all is straight you will get on very well. You will be able to pay off the loan on our house just as we have been doing. I will have to borrow $25.00 from George, see he is paid."

On the 30th day of September, 1903, just before Mrs. Swain left for Bellville, she wrote the following letter:

225 S.W.—50

"Houston, Texas, Sept. 30, 1903.
"Wednesday morning

"My precious Fannie, if anything should happen to me while at Bellville, I have written a few lines for you to go by as my dying request. If poor little Mary is given to me, I want you to have her, take care of her little property and when she is grown and perhaps married then turn it over to her. I have left you almost all my property and any money I may get from land or the claim in Washington. I want $100 put out at interest for Mary and $100 put out at interest for Little Mertie, to be given her when 18 years old, as a present from her aunt Lizzie, Mary the same. She will have some little property that was her Pa's and if you raise her that is enough for us to do for her. You can get some one to take this house and board with them. Maggie will help you about Mary and as soon as you get the loan debt paid you can stay at home yourself. I hope you will get money coming to me to do that soon. My life insurance, pay Mrs. McLeroy as soon as you can out of that and out of that the $200 for the children, then my funeral expenses, of course I want to be buried at Columbia and if you ever can, have all of the graves marked. I owe Maggie $24 and George for ice since the 1st of Jan., $1.50 comes off for his board while Maggie was in Galveston. I write all this but pray God to spare me to you a while longer. I would like to live to get all this property cleared and freed from debt and you and I enjoy a little while together in ease. I would like for us to be able to take little pleasure trips together and if we ever get this place paid for. we will do so.

"Fannie you have been a great comfort to me and I appreciate every kind word and action you have done. Now my dear child remember my request and above anything don't have one thing to do with that vile scoundrel, Hendricks.

"Your loving Mama.

"I have written this with my heart full and tears in my eyes."

Mrs. Swain placed all these papers together in a trunk where she kept her keepsakes, and they were not discovered until some time after her death, which occurred on the 21st day of February, 1905. The existence of these papers were not known to appellee for several months after the death of Mrs. Swain. On the 31st day of March, 1905, appellee Fannie Hall, then Fannie Swain, filed her application in the county court of Harris county for appointment of herself as administratrix of the estate of her mother. Thereafter, on the 25th day of May, 1905, she filed an application in said court to probate the paper or papers written by Mrs. Swain on the 29th day of September, 1903, hereinbefore set out, as the last will and testament of the said mother, recounting therein that such will had just been discovered, and therein withdrew her application for appointment as administratrix. On the 8th day of September, 1905, said application was granted, and said will was duly probated as the holographic will of Mrs. Swain, and Miss Fannie qualified as executrix.

After the death of Mrs. Swain, who had for some years been the guardian of the person and estate of her minor grandchild, now Mary Belle Minor, appellee, then Miss Fannie Swain, succeeded her as guardian of the person and estate of said minor. After the probate of the will and the qualification of Miss Fannie as such executrix she paid the liens resting against the home place in full and the other items mentioned in the will, and thereafter on the 18th day of September, 1907, upon final showing, the property involved in this suit was turned over to her as her own property. Further carrying out the bequests in the will, Miss Fannie purchased for appellant Mary Belle Minor a lot in Houston Heights, for which she paid $100, and she also purchased another lot for Mertie Phillips, for which she paid $100. Said lots so purchased were accepted in settlement of the bequests made in the will for them. She also took charge of and cared for appellant, and also took charge of lot 518 and improvements thereon belonging to appellant. The other lots 9 and 10, shown in the showing of Mrs. Swain while she was acting as guardian to belong to appellant, having been sold under foreclosure sales to pay the liens against them, prior to the death of Mrs. Swain, were no longer considered the property of said minor, and were not taken possession of by Miss Fannie. After the probate of said will, and after she qualified as guardian of the person and estate of appellant, Miss Fannie, now Mrs. Hall, collected rents from appellant's property and paid taxes, premiums for insurance, and other expenses chargeable to said property out of said rents. After due notice appellee was upon final showing discharged as guardian of the estate of appellant.

On the 18th day of December, 1909, Mrs. Fannie Hall, née Fannie Swain, joined by her husband, W. W. Hall, filed suit in the Fifty-Fifth district court of Harris county against Mary Belle Meek, who is now Mary Belle Minor, appellant herein. Said suit was numbered on the docket of said court 48989, and was a suit in trespass to try title to the property involved in the present suit. In the petition it was alleged that plaintiff, Fannie Hall, was the owner of said property by virtue of the will of Mrs. Lizzie J. Swain. It was further alleged that, as the will of Mrs. Swain, under which she claims, does not describe the property by lot and block numbers, although otherwise described, such description is vague until extraneous evidence is produced to identify it more certainly. She brings this suit in order to remove any cloud that might be cast upon her title for want of a more definite description, and to have the court decree, as between her and Mary Belle Meek (now Mary Belle Minor), the fact to be that said property is the same referred to in the will of Mrs. Swain as the home place, and the same devised to the plaintiff by said will. Citation was issued in said suit and the same was duly returned by the proper officer, showing that he had served a true copy thereof on the defendant Mary Belle Meek. It being recited in the petition that plaintiff was the guardian of the estate of defendant, and therefore disqualified to represent her in the suit, the court appointed Mr. C. A. Murphy, an attorney of Houston, as guardian ad litem to represent the minor defendant. By agreement of the parties the case was transferred to and filed in the Sixty-First district court of Harris county. C. A. Murphy, guardian ad litem, answered by general demurrer and general denial. On the 9th day of April, 1910, the cause came on for trial, and the court, trying the cause without a jury, overruled the general demurrer of the defendant, and upon hearing the evidence rendered judgment for the plaintiff for the property sued for. In this judgment it is recited that the defendant had been duly cited in manner and form as required by law; that she appeared in person and by C. A. Murphy, her guardian ad litem, and announced ready for trial, and submitted the matters of law and fact to the court.

On the 2d day of July, 1915, appellant Mary Belle Minor, formerly Mary Belle Meek, joined by her husband, C. E. Minor, brought two suits in the Fifty-Fifth district court of Harris county against appellee Fannie Hall and husband. One of these suits was numbered 67387, and was an action to remove, by certiorari, the probate proceedings in the estate of Elizabeth J. Swain to the district court for the purpose of reviewing all the orders made in that court, with the exception of the order admitting to probate the will of Mrs. Swain; the probate of said will not being attacked. The other suit was an action in trespass to try title to and for the recovery of the property claimed by appellee Mrs. Fannie Hall under the will of Mrs. Swain, and to set aside the judgment rendered in cause No. 48989, Hall v. Mary Belle Meek Minor. On the 25th day of September, 1915, both of these suits were transferred to the Sixty-First district court of Harris county and were thereafter consolidated. After such consolidation the plaintiffs filed their first amended petition upon which they went to trial. By this petition it was alleged that the plaintiff Mary Belle Minor was the owner of the land described as the "home place" in the will of Mrs. Swain and that she was entitled to possession thereof. The relationship of the parties to Mrs. Swain, and her death, were also alleged. The existence of the will of Mrs. Swain and its probate were alleged, and the will as probated was set out in full. It was alleged that the will contains conditions precedent and subsequent, and that the defendant Mrs. Hall had failed to meet such conditions, either precedent or subsequent, and therefore no title to the property involved

herein ever passed to her by said will, and therefore she, plaintiff, was entitled to recover one-half of said property, together with one-half of the rents from said property collected by the defendant, as an heir of Mrs. Swain. It was alleged in a general way that the defendant Fannie Hall had fraudulently concealed from the probate court that the plaintiff Mary Belle Minor had any interest under the will of Elizabeth Swain, without stating particular acts tending to show such concealment. The petition then proceeded to directly attack the judgment rendered in said cause No. 48989, Hall et al. v. Mary Belle Meek, and alleged the minority of the defendant in that suit, and that appellee was her guardian at the time said suit was filed, and had concealed the appellant's interest. That the appellee had concealed the appellant's interest in the land derived under her grandmother's will from the guardian ad litem, and had failed to make a full disclosure to him of the interest of the minor in said suit, and had thereby procured and obtained the judgment against her which constituted a violation of her duties as guardian of the person and estate of the plaintiff, and that if said judgment should be held valid that its acquisition was brought about by the unfaithfulness of the appellee as guardian, and that she was liable to the plaintiff for all the damages thus occasioned. It was further alleged that the judgment in cause No. 48989 was a nullity, for the reason that the guardian could not sue her ward while acting as such guardian.

The prayer was for a review of all of the orders entered in the estate of Elizabeth Swain, and for a cancellation of all such orders, except the order admitting to probate the will of Mrs. Swain, for a full accounting for rents received by appellee from said property since the death of Mrs. Swain, and for a recovery of one-half of said property and one-half of said rents.

The defendant Hall and wife answered by plea of not guilty; pleaded the will of Mrs. Swain and its proper probate; also pleaded the statute of limitation of 1, 2, 3, 4, 5, and 10 years, and that the judgment in cause No. 48989 was res adjudicata as to the action of appellants. They specially pleaded that the property involved in this suit was bequeathed to appellee Fannie Hall by the will of Mrs. Swain, and that she has title by virtue thereof.

There were other parties to the suit whom it is unnecessary to further mention, as their connection with the case in no way affects the controlling issue presented by this appeal.

The case was tried before a jury. After the evidence was heard the court instructed a verdict for the defendants. Such verdict being returned, the court rendered judgment, describing the real property sued for, and then further adjudged as follows:

"It is further ordered, adjudged, and decreed that the will of Mrs. Elizabeth J. Swain, deceased, be, and the same is hereby, construed to devise to and vest in the defendant Fannie Mott Hall, formerly Swain, the unconditional fee-simple title to the land and premises hereinbefore described, and all other issues in this cause are hereby adjudged against the plaintiffs and in favor of the defendants W. W. Hall and wife, Fannie Mott Hall; and it is also ordered, adjudged, and decreed that all of the right, title, interest, and claim of the said plaintiffs, Mary Belle Williams and her husband, M. H. Williams, in and to the hereinbefore described land and premises be, and the same are hereby, divested out of them, and each of them, and vested in the said Fannie Mott Hall and W. W. Hall, and that the land is the separate estate of the said Fannie Mott Hall, and that said Fannie Mott Hall and W. W. Hall have and recover of and from the plaintiffs the title to the hereinbefore described land and premises."

From this judgment the plaintiffs have appealed.

By the first assignment it is insisted that—

"The court erred in giving to the jury the peremptory instruction for the defendants, for the reason that the facts showed that the plaintiffs were entitled to recover, and the defendants were not."

By the first and second propositions under this assignment it is asserted: First, that the judgment rendered in cause No. 48989 was void, or at least voidable, upon direct attack, and, being so attacked, under the facts shown, did not constitute res adjudicata; and, second, that if such judgment was valid, it did not have the effect to divest appellants of their interest in the property involved, because at the time same was rendered appellee Fannie Hall was the guardian of appellant Mary Belle Minor, and therefore any rights appellee acquired by such judgment would be held by her in trust for appellant as a trustee in invitum for the use and benefit of her ward.

It is apparent from the recitals in the judgment rendered that the court in instructing a verdict for the defendants Hall did not consider the judgment in 48989 as constituting any defense to the plaintiffs' suit, but based his conclusion wholly upon the recited fact that by the will of Mrs. Swain the title to the property sued for was devised to and vested in appellee Fannie Hall unconditionally, and it is therefore unnecessary for us to pass upon the questions presented by the foregoing propositions.

[1] By the third, fourth, and fifth propositions under said assignment it is insisted: First, that the will of Mrs. Swain contained conditions precedent which were not complied with by Miss Fannie, and therefore the title to the property in suit never passed to her under said will; and, second, that the will contained conditions subsequent which were never complied with by Miss Fannie,

and for this reason no title passed to her under said will. If the will of Mrs. Swain did devise to and vest in Miss Fannie the unconditional fee-simple title to the property sued for by appellants, as found by the court, unquestionably the court did not err in ignoring all other defenses interposed and directing a verdict for appellees. But we have reached the conclusion that by the words, "This is to hold good if Fannie does as I request her," found in the clause added to the will which followed the signature of the testatrix, and which was probated as a part of the will, did require Miss Fannie to pay the burial expenses incurred in the burial of the testatrix, the $500.47 due to Mrs. Levy, and the indebtedness which were liens against the home place, and to invest $100 for appellant Mary Belle Meek, now appellant Mary Belle Minor, and $100 for Mertie Phillips, as a condition either precedent or subsequent to the passing of the absolute title to her. But we also find that the undisputed evidence shows that all these requirements were met and fully discharged by Miss Fannie, and we therefore further conclude that no judgment other than the one rendered could have been properly rendered.

[2] Appellant, however, contends that the words "pay all that is owed on Mary's property out of her money," found in the will, means that Fannie was to pay what was owing by Mary on her, Mary's, property out of Fannie's money, and that if such words did not plainly require Fannie to pay such debts out of her own money, they were at least ambiguous, and therefore the court should have submitted to the jury for their finding as to whether such words required Fannie to pay such debts with her own money or with Mary's money. We cannot agree with the contention that the words quoted from the will could be construed as requiring Fannie to pay Mary's debts with her, Fannie's, money, or that such words created an ambiguity. This is especially apparent when such words are read in connection with words immediately following them. The sentence as a whole is as follows:

"Pay all that is owed on Mary's property out of her money, keep up her place, taxes, insurance, and the rest you will have to use for her."

It would be absurd, it seems to us, to contend that Mrs. Swain required Fannie to pay Mary's debts and obligations out of her, Fannie's money, and to use the rest of Fannie's money for Mary. When the will is read as a whole it is clear, we think, that the intention of Mrs. Swain at the time she wrote her will was to request Fannie to "look out for Mary," that is, take care of her and her property, and to appropriate the rents and revenues from Mary's property to the payment of the mortgages then resting against lots 9 and 10, inherited by Mary from her father, which were sold to satisfy said mort-

gages before Mrs. Swain died, and also in payment of taxes and premiums for insurance on said property. It is apparent from what we have said that we do not think the court erred in directing a verdict for appellees, as there was no ambiguity in the will, and, as we have already said, the undisputed and uncontroverted evidence shows that Fannie complied with all the requests set forth in the will, which could have been complied with after the death of Mrs. Swain.

What we have already said disposes of the matters presented by assignments 2, 3, 4, 5, and 6, adversely to appellant, and therefore such assignments are overruled without further discussion.

It is shown by bill of exceptions that in the evening of the second day after the trial had begun the defendants offered in evidence the letter written by Mrs. Swain on the 30th day of September, 1903, heretofore set out; that appellants objected to its introduction; that the court took the matter under consideration, and adjourned the court until the following day; that on reassembling appellants presented to the court an amended petition, wherein they repeated the allegations of the former petition, and in addition thereto alleged that they had just learned of the letter in question for the first time; that such letter was a part of the will of Mrs. Swain, and that it had been fraudulently concealed from the court at the time the other parts of said will were probated, and therefore the whole or entire will of Mrs. Swain had never been probated. They also alleged that this letter shows that Mrs. Swain did not intend that the will probated should constitute her will unless she died while on her trip to Bellville. They thereupon prayed that such probate be set aside. The court refused to permit the filing of this amendment. Appellants have made such refusal the grounds of their seventh assignment.

There is nothing in the record except the bill of exception showing upon what ground the court based his refusal, but it is substantially stated in the bill of exception, which was approved by the court, that upon consideration of said amended petition and the will as probated, the court concluded that the new matter contained in said amended petition was immaterial and not pertinent to any issue that could be made on the instrument offered. Evidently it was the view of the trial judge that the instruments probated constituted the entire will of Mrs. Swain, and that the letter pleaded in said amended petition was no part thereof, and that therefore a failure on the part of Mrs. Fannie Hall to advise the judge of the probate court of the existence of such letter before or at the time of the probate of the will of Mrs. Swain was not and could not have been an act of fraud on her part resulting in the probate of said will; in other words, that the production of this letter could not have properly influenced

the court adversely to his judgment probating the will.

[3] If we have correctly stated the position taken by the judge trying this cause, we must sustain his action in refusing to permit appellants to file the amended petition, for the reasons stated, if for no other, but we have reached the conclusion that for another and unanswerable reason the refusal of the court to permit such filing does not constitute error. It was inferentially alleged in the petition, upon which appellants went to trial, that it was not their purpose to attack the will of Mrs. Swain as theretofore probated. The amended petition, the refusal of which complaint is here made, was, in substance a suit to set aside the probate of the will of Mrs. Swain and to contest its probate in the district court. It was alleged in said petition that it constituted a new cause of action from that set up in all preceding petitions. It being thus clearly shown that the attempt to file the rejected petition was an attempt to submit to the district court a cause of action over which it had no jurisdiction, the court committed no error in refusing to permit the petition to be filed. The present Constitution confers no original jurisdiction upon the district court over county courts sitting as probate courts. It does, however, provide that the district court shall have appellate jurisdiction and control in probate matters over the county court under such regulations as may be prescribed by law. Article 1706, Vernon's Sayles' Civil Statutes, gives the district court appellate jurisdiction only over the county court in probate matters, and at no time has the Legislature attempted to confer upon the district court original jurisdiction to hear and determine the contest of a will which had been theretofore probated in the county court, nor is any such power conferred by the Constitution. We therefore conclude that the district court had no jurisdiction to hear the cause attempted to be set up by the rejected petition, and hence its rejection was not error.

[4, 5] If appellants desire to have the order of the county court probating the will of Mrs. Swain set aside, they should have gone into the county court, a court of original jurisdiction over such matters. An issue must first be made and determined in the court of original jurisdiction before the jurisdiction of the appellate court can attach, and then only by appeal or certiorari. The district courts under our present Constitution have no jurisdiction to annul, by an original proceeding, the action of a county court in probating a will. Franks et al. v. Chapman, 60 Tex. 46; Ballard v. Wheeler, 23 Tex. Civ. App. 422, 56 S. W. 946; Franks v. Chapman, 61 Tex. 576, at page 579; Dew v. Dew, 23 Tex. Civ. App. 676, 57 S. W. 926, and authorities there cited.

In the case of Franks v. Chapman, 60 Tex. 46, Judge Stayton, for the Supreme Court of this state, mentioned the cases of Parker v. Parker, 10 Tex. 83, and Vickery v. Hobbs, 21 Tex. 571, 73 Am. Dec. 238, cited by appellants, as correctly decided under the Constitution of 1845, but that the holding in those cases is no longer the law under the Constitution now in force. It is further said in Franks v. Chapman, 60 Tex. 45:

"The parties seek in this cause to revise, review or correct proceedings had in the probate court; to annul its decree probating the will of Chapman; and to do so they must pursue the method prescribed by law to confer jurisdiction of the matter upon the district courts, for such courts have no original jurisdiction to probate wills, nor to annul a decree of a probate court admitting a will to probate, unless it be in a case in which a county judge is disqualified, when such power is expressly conferred. Const. art. 5, § 16."

Again:

"Article 3213 provides that, 'Any person interested in any will which shall have been probated under the laws of this state may institute suit in the proper court to contest the validity thereof, within four years after such will shall have been admitted to probate, and not afterward.' This does not prescribe the mode of procedure, nor in what court it shall be instituted, but simply limits the time within which such procedure shall be instituted. The reference indicates that this section of the Revised Statutes is a part of section 3 of the Act of August 9, 1876. General Laws 1876, p. 94.

"A reference to the original act shows that it was intended that the proceeding to set aside the probate of a will should be instituted in the court in which the will was admitted to probate; and it might be held, as the section of the Revised Statutes referred to does not indicate in what court a proceeding should be instituted to set aside a will which has been probated. that it was in the intention of the Legislature that it should be instituted in the probate court, as provided by the act of August 9, 1876. R. S., Final Title, § 19. This view is strengthened by the fact that, in addition to the remedies which are given by appeal and by certiorari to correct any decree which may have been made in a probate court in reference to the estate of a person under guardianship, the statute expressly gives a remedy by bill of review in the same court in which the proceeding sought to be corrected was had. R. S. art. 2717. This would seem to be a peculiarly proper course of procedure in reference to the annulling of a decree of a probate court probating a will.

"As the district courts have no original jurisdiction to probate wills, except in the case specially provided for in the Constitution, if such courts can probate a will at all in other cases, it can only be done by them when jurisdiction is had over the case under the appellate jurisdiction given by the Constitution."

In Franks v. Chapman, 61 Tex. 576, Judge Stayton, speaking for the Supreme Court, held that the county court was the proper court in which to institute a proceeding to contest the validity of a paper admitted to probate as the will of a deceased person, and

that the district court had no original juris-diction to determine such matters.

It is apparent from what has been said that we have reached the conclusion that the judgment should be affirmed, and it has been accordingly so ordered.

Affirmed.

### On Motion for Rehearing.

In appellants' motion for rehearing we find this statement:

"This court erred in holding and stating in its opinion that appellants contended that, if the conditions in the will were either precedent or subsequent, the title never passed to the appellee, Fannie Mott Hall, for the reason that appellants' contention, clearly stated in their pleadings and in their brief, was that the title would not pass and did not pass if the conditions were to be precedent, but that if the conditions were held to be subsequent, and as to all of such conditions as were subsequent, the title would pass subject to forfeiture of the title for the failure of the appellee to comply with the conditions subsequent, and that, as the appellant Mary Belle Minor would have been an heir at law of the testatrix, she could claim a forfeiture of the title by reason of the failure, if any, of the appellee to comply with the conditions subsequent.

"The statement of the court in its opinion shows that the court took the view that the appellants did not distinguish between the legal results to flow from the two characters of conditions, and thereby placing the appellants in the attitude of having made another 'absurd' contention to the effect that the title would not pass to the beneficiary named in the will in the event the conditions were held to be subsequent. It was never contended by the appellants that the title would not pass if the conditions were subsequent, but it was insisted that as the appellant was an heir at law, in the absence of a will, she would have the authority to urge a forfeiture of the title, even if it has passed, on account of a failure to comply with the conditions subsequent; but this court, inadvertently, no doubt, has made the statement that the appellants made the contention that the title would not pass if the conditions were held to be either precedent or subsequent. This contention places the appellants in the attitude of urging a proposition of law contrary to all the accepted principles in reference to that question, and puts them in an attitude that they never took, and do not now take, and we therefore respectfully request the court to correct an error which is so palpably contrary to appellants' contentions, and so damaging to them when spread upon the perpetual records of this court, whereby they will stand convicted of contending for an additional 'absurdity' to the one already found by the court in another place."

We cheerfully admit that the above statement is correct, but, as we found that appellee Fannie Mott Hall had fully complied with all the requirements of the will of her mother, whether precedent or subsequent, the statement made would not affect the result

of our conclusions, therefore we see no necessity for doing or saying more in answer to the complaint above set out than to admit our inaccurate statement. In our original opinion we also stated as follows:

"We cannot agree with the contention that the words quoted from the will could be construed as requiring Fannie to pay Mary's debts with her (Fannie's) money, or that such words created an ambiguity. This is especially apparent when such words are read in connection with words immediately following them. The sentence as a whole is as follows: 'Pay all that is owed on Mary's property out of her money, keep up her place, taxes, insurance, and the rest you will have to use for her.' It would be absurd, it seems to us, to contend that Mrs. Swain required Fannie to pay Mary's debts and obligations out of her (Fannie's) money, and to use the rest of Fannie's money for Mary."

Counsel complains of the use of the word "absurd," and characterizes its use by us as a "harsh and severe" criticism of their contention. We, however, disclaim any intention of being or appearing to be disrespectful to counsel. We only used the word "absurd" in the sense of unreasonable, and we still think the construction contended for by counsel would be unreasonable.

With the explanation above made, the motion is refused.