**Bill MARLIN, Appellant,**

v.

**Dr. Robert P. KELLY, et al., Appellees.**

**No. A14–82–406CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 5, 1984.

Grant Cook, Thomas D. Cordell, Reynolds, Allen, Cook, Pannill & Hooper, Houston, for appellant.

Fred M. Lange, Clarence F. Kendall, Jr., Louis S. Zimmerman, Fulbright & Jaworski, Robert A. Hall, Woodard, Hall & Primm, W. Harold Sellers, Sellers, Berg & Mathews, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a declaratory judgment construing a clause in the will of Paul W. Drummet, deceased. The trial court entered a take nothing judgment against appellant, Bill Marlin, (Marlin) as to the estate's executor, the surviving widow, and third parties who were involved in the purchase of land from the Drummet Estate. The principal question presented for review is an issue of first impression: Is appellant Marlin, who is designated by the will as exclusive real estate agent for the sale of real property devised to the widow Drummet, a conditional beneficiary and thereby entitled to collect his specified commission from the sales proceeds of estate real property which was sold through another agent? We conclude that appellant Marlin was a conditional beneficiary and reverse the judgment of the trial court.

On December 12, 1975, Paul W. Drummet (decedent) was hospitalized and an attorney, Jim McConn, was summoned to his bedside to help him prepare and execute his will. McConn was an associate attorney with a law firm previously used by decedent in numerous real estate transactions. He arrived with a simple will form in hand. He had never met Drummet prior to this time and had no prior information concerning the preparation of the will. He spoke alone with Drummet in his hospital room concerning the terms of the will. After obtaining the necessary information, McConn retired from Drummet's room and drafted the will. He then returned and

explained the will to Drummet who after reading it signed the will without change. The will was then properly witnessed and notarized. It contained five pages, four of which consisted of typewritten form pages with appropriate deletions and handwritten insertions contained thereon. One of the handwritten insertions was contained under a typed paragraph entitled "ITEM III DISPOSITION OF ESTATE." The first paragraph devised one-half of a 200 acre H & H Guest Ranch to decedent's wife, Inez Drummet, and one-half of the same ranch in trust to Willie Durrell, six years old, with certain trust conditions set out therein. After this provision, the next paragraph provided that: "All the rest of my property, real or personal [is] to go [to] my wife." The final clause contained on this page which is the focal point of this controversy, and is hereinafter referred to as the "Marlin Provision," reads as follows:

Bill Marlin is to be the exclusive real estate agent (6% commission) for the sale by my wife of any of the r/e passing to her hereunder and he shall have a right against the sales proceeds to her to collect that commission.

Drummet died two months later on February 12, 1976, and his will was admitted to probate on March 3, 1976. Thereafter, Dr. Robert P. Kelly, the executor, orally gave Marlin an opportunity to sell a substantial portion of the real estate, which was purportedly necessary in order to pay federal and state inheritance taxes. Marlin posted the property and began seeking a buyer. About nine months after decedent's death, Garland Fielder, who is the son by a prior marriage of decedent's wife, Inez Drummet, sought and obtained a non-exclusive commission agreement with Dr. Kelly on the sale of this same land. Marlin was not informed of this agreement and continued to seek a buyer for the property. Approximately one year later, Dr. Kelly and Inez Drummet entered into a series of contracts with her son, Fielder, which culminated in the sale of the land to World/Houston, Inc., a corporation in which Fielder was a fifty-one percent shareholder. Fielder was paid a six percent commission on the ten

million dollar sale. One year later, World/Houston's stock was sold to a third party for twenty-four million dollars. Its principal asset was the Drummet real estate.

Marlin then sued Dr. Kelly, as executor, and Inez Drummet to collect the six percent commission from the sale of the land to World/Houston, Inc. In addition, he sued Garland Fielder and World/Houston, Inc. for interference with the exclusive contractual relationship he had with Dr. Kelly, as executor of the estate. Trial was to the court, who after hearing the evidence, entered a take nothing judgment against appellant Marlin.

In six points of error, appellant Marlin contends that the trial court erred by finding: (1) that he was not a beneficiary under decedent's will; (2) that the sale to World/Houston, Inc. was not a sale by Inez Drummet; (3) that he was not appointed under the will as the exclusive real estate agent for the sale of all real estate passing to Inez Drummet; (4) that Dr. Kelly did not enter into a valid agency contract with him for the sale of all the real estate; and (5) that Garland Fielder and/or World/Houston was not liable for interference with the contractual relationship between himself and Dr. Kelly.

In his first point of error, appellant contends that the trial court erred in finding that he was not a beneficiary under the last will and testament of decedent. As indicated, we agree with this contention and find that Marlin was, in fact, a conditional beneficiary. Our reasoning is grounded on the fundamental rule that the intention of the testator is the paramount consideration and the determining factor in the interpretation of a will. The testator's last will represents his unilateral, final, and ultimate legal decision. Thus, his intent becomes the single most important factor in any controversy involving a will. *See Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885 (1960). Although a testator's intention must be gathered primarily from the terms of the will itself, any material

fact or circumstance that tends to shed light on the intention of the testator may be considered where necessary to resolve a doubt in this respect. *Stewart v. Selder,* 473 S.W.2d 3 (Tex.1971). We will avoid a construction of a testamentary provision that has the effect of defeating or thwarting the intention and purpose of the testator as expressed in the will as a whole.

When, as here, a will is plain in its terms and unambiguous in its meaning as to the lawful intentions of the testator, it is a legal question for the court to interpret the will and carry out the testator's wishes. It is presumed that the testator placed nothing superfluous or meaningless in his will and that he intended every part, sentence, clause, and word to have a meaning and to play a part in the disposition of his property. A provision, clause, or word will be ignored only where it is clearly illegal or clearly contrary to the general intention of the testator. *Peden Iron & Steel Co. v. Lockett,* 131 Tex. 287, 115 S.W.2d 405 (1938). Even if the will clause here were construed to be ambiguous, the extrinsic facts introduced into evidence clearly are supportive of decedent's intent to make Marlin a conditional beneficiary. The decedent had a close professional and personal friendship with appellant for approximately twenty years, and during that time, appellant had served as his real estate agent in all transactions involving the concerned property which is located in the area of the Houston Intercontinental Airport. The record reflects that the decedent relied on Marlin's advice in all real estate matters. Marlin was present at the hospital when decedent's will was executed. In fact, the day before decedent executed his will he signed an earnest money contract for the sale of a portion of his land in the same area, which contract named Marlin as decedent's real estate agent. This sale was closed by Marlin prior to decedent's death. The decedent had previously appointed Marlin to be a member of the Architectural Control Committee for the concerned tracts, and had also named him to be one of the Trustees of a nonprofit foundation, the Intercontinental Center, organized by the decedent.

We construe the Marlin Provision as devising to Inez Drummet, appellee, all of decedent's real estate, with the exception of a one-half interest in the ranch, which is otherwise disposed of in the will, and we further find that appellant Marlin's interest therein is in the nature of a charge upon the land so devised if, as, and when she sells it. See *Conway v. Estes,* 346 S.W.2d 374 (Tex.Civ.App.—Fort Worth 1961, no writ); *Rubio v. Valdez,* 603 S.W.2d 346 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.). Appellees vigorously assert, however, that since the widow Drummet was given a fee simple in the real property, there can be no such limitation on it for Marlin's benefit. We do not agree. The Marlin Provision in no way detracts from Inez Drummet's interest in the land. As reflected in *Rubio* and *Conway,* a charge on the land does not affect the fee simple interest of the devisee. She is free to keep it, encumber it, give it away, or sell it. Only in this latter instance is she obligated to pay six percent from the sales proceeds to Marlin. Additional testative intent as to Marlin's status is reflected in the fact that the Marlin Provision is located under Item III, "Disposition of Estate," and not under the section of decedent's will dealing with the appointment of representatives of the estate.

As a matter of law, we find appellant Marlin was entitled to a six percent commission on the sale of the land to World/Houston, Inc. Any contrary conclusion would defeat the overriding intent of the testator manifested by the clear language of the will that appellant was to be the exclusive real estate agent for the sale of real estate that passed to his wife. By entering into an agreement with appellee Fielder, son of the widow Drummet, to sell the land, and allowing him to consummate the sale to a corporation fifty-one percent of which was owned by himself, the executor and decedent's widow acted in clear derogation of decedent's testamentary intent. We hold that appellant was a condi-

tional beneficiary of the will and has a right to receive the specified commission due him for the sale of land to World/Houston, Inc. from the estate of decedent and Inez Drummet.

Appellees, however, argue that the language of the Marlin Provision is merely precatory and not binding on appellees Kelly and Drummet. We disagree. The language of the Marlin Provision is clearly mandatory: "Bill Marlin *is to be* the exclusive real estate agent ... and he *shall* have a right against the sales proceeds to her to collect that commission." (Emphasis added). Any other construction would defeat decedent's intent. Indeed, in some cases, even precatory words in a will are enforceable if, when considering the will as a whole and the circumstances surrounding its execution, it appears that testator intended to impose an obligation. *Byars v. Byars*, 143 Tex. 10, 182 S.W.2d 363 (1944). Appellant's first point of error is sustained.

In his second point of error, appellant contends that the trial court erred in finding that the sale to World/Houston, Inc. was not a sale by Inez Drummet. We agree with appellant in this regard and hold that it was, in fact, a sale by her. The record reveals that Inez Drummet participated in every phase of the series of transactions which led to the sale of four-hundred acres to World/Houston, Inc. on January 19, 1978. She signed every document pertaining to the transactions, the two deeds, and was present at the closing. In an unconvincing argument, appellees contend that Inez Drummet merely signed the two deeds and other instruments pro forma. In fact, they assert she had nothing to do with the sale. They argue that the sale was strictly a sale by the executor, Dr. Kelly, and is not, therefore, chargeable with the six percent commission under the Marlin Provision which required a "sale by my wife." However, Section 37 of the Probate Code provides in part:

> When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, and all powers of appointment granted in such will, shall vest immediately in the devisees or legatees of such estate ... subject to the payment of the debts of the testator ...

Thus, Inez Drummet owned the concerned land at the moment of her husband's death subject only to the debts of the testator and to the Marlin charge which was operative if, as, and when the property was sold by her. *See Welder v. Hitchcock*, 617 S.W.2d 294 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). We will not allow an extremely technical and strained interpretation of the words "by my wife" in the Marlin Provision to defeat decedent's obvious intent that appellant be the exclusive real estate agent for the sale of any land inherited by his wife. *Federal Land Bank of Houston v. Little*, 130 Tex. 173, 107 S.W.2d 374, 377 (1937). The record clearly reflects that she fully participated in the sale of the property by her son to his corporation.

By law, Dr. Kelly, as executor, was by the terms of the will, vested with unbridled authority over the estate and is authorized to do any act respecting it which the court could authorize to be done if the entire estate were under its control; or whatever testator himself could have done in his lifetime, *except as restrained by the terms of the will itself*. *Hutcherson v. Hutcherson*, 135 S.W.2d 757 (Tex.Civ.App. —Galveston 1939, writ ref'd). *See also* Tex.Prob.Code Ann. § 332 (Vernon 1980). In view of this, we must now consider whether it was immediately necessary to sell the land to pay the estate taxes or not, a consideration emphasized so stringently by appellees as justification for abrogating appellant's exclusive agency and giving the power to sell to the widow's son by a prior marriage. Kelly, as executor, had the power to sell the land, but as a fiduciary he was not empowered to act against the clearly expressed wishes of decedent and deprive appellant of the real estate commission on the sale of the land by Inez Drummet. Kelly's awareness of the provision is evidenced by his retention of Marlin to sell the property, who began to do just that.

He also unsuccessfully sought from Marlin a waiver of his rights under this provision. We are not convinced by the argument that it was, in fact, immediately necessary to sell the land through Fielder to pay the federal estate taxes instead of allowing it to be sold through appellant as Paul Drummet mandated in his will. There is no evidence in the record that Kelly communicated any real sense of urgency about the sale to appellant, nor is there any probative evidence that the taxing authorities regarded the estate as anything other than solvent or contemplated lien foreclosure proceedings. We find no sufficient reason under these circumstances to short-circuit the testator's expressed intent in his will. As a matter of law, we find the sale was, in effect, a sale by appellees Drummet and Kelly in contravention of decedent's will. Appellant's second point of error is sustained.

In his third point of error, appellant contends that the trial court erred in finding that the Marlin Provision did not constitute a valid appointment of him as the exclusive real estate agent for the sale of all real estate passing to Inez Drummet under the will. We agree. The testamentary provision, as discussed, did so appoint him; and his commission interest in such sale proceeds short of his death, inability, or refusal, real or implied, was inviolate. It was contemplated that he would carry out the sale of the property, but he was effectively prevented from doing so by the executor and the surviving widow. However, their deliberate action in no way could divest Marlin of his interest in the proceeds as mandated by his exclusive agency in the will.

Appellees, however, urge that Marlin cannot be a conditional beneficiary because there are no words of gift or bequest in the Marlin Provision. Indeed, they assert that a "commission" as specified in the Marlin Provision is an onerous consideration received as compensation for a particular act and therefore it is impossible for it to be gift. Appellees offer as support for this argument numerous cases dealing with commissions being defined as consideration and therefore inconsistent with being a gift. *Welch v. Gammage,* 545 S.W.2d 223 (Tex.Civ.App.—Austin 1976, writ ref'd n.r. e.); *Kearse v. Kearse,* 276 S.W. 690 (Tex. Comm'n App.1925, judgment adopted). We do not, however, find these cases dispositive of the issue before us. Rather, we find the situation here analogous to conditional gifts or conditional bequests in wills which have long been recognized by our courts. Texas courts have repeatedly approved conditional bequests in a will requiring the donee to perform some service or to take some action as a condition to receiving the legacy. *See Minor v. Hall,* 225 S.W. 784 (Tex.Civ.App.—Galveston 1920, writ dism'd.) In *Minor,* the appeals court upheld a conditional bequest by testatrix that "this is to hold good if Fannie does as I request her." The beneficiary, Fannie, was to receive substantially all of testatrix's property if she paid certain funeral debts and carried out other monetary conditions. *See also Messer v. Carnes,* 71 S.W.2d 580 (Tex.Civ.App.—Waco 1934, no writ), where the court validated a bequest conditional upon donee's support and care of the testatrix for life.

More relevant to the present case is the holding that where a testamentary bequest or legacy is conditional on the requirement that the recipient render a service or do something, and where the recipient has partially performed, and thereafter has been prevented from complying by the actions of the executor, the donee is nevertheless entitled to the bequest even though he has not literally performed the condition. *See Lange v. Houston Bank & Trust Co.,* 194 S.W.2d 797 (Tex.Civ.App.—Galveston 1946, writ ref'd n.r.e.). In *Lange,* a bank holding trust funds as executor of a trustee's estate effectively prevented the substitute trustees from carrying out the terms of the trust which was for the use and benefit of a mentally ill relative who died in the interim. The bank and other legatees sought to prevent the substitute trustees from inheriting the balance left in the trust fund, to which they were entitled if they had served

as trustees in accordance with the testamentary trust. The bank contended that they were not so entitled because they had not, in fact, qualified and served as trustees. The appeals court reversed and rendered the trial court's judgment and held that the substitute trustees had demonstrated that they were ready, willing and able to perform but had been prevented from doing so by the acts of the bank. The appeals court quoted with approval an early Connecticut case, *Seeley v. Hincks*, 65 Conn. 1, 31 A. 533, 537 (1894).

> "It thus appears that the conditions to be performed by the plaintiff were not fulfilled solely because the executors prevented their fulfillment. This certainly is a result never contemplated by the testator, for he must have supposed that his executors would obey the implied obligation laid upon them in the codicil, to give the plaintiff an opportunity to carry out the testator's plan and purpose as therein expressed ..."

We find that the reasoning in *Lange* is particularly applicable here. We hold that Marlin is entitled to an amount equal to six percent of the proceeds of the property sold notwithstanding the fact that he did not act as the real estate agent in that transaction because he was prevented from doing so by the actions of the executor and the widow Drummet contrary to the expressed intent of the testator. *See In Re Trybom's Will*, 277 N.Y. 106, 13 N.E.2d 596 (1938). *See also* Annot., 76 A.L.R. 1342 (1932).

As a final point we find that appellees' argument concerning a lack of specific words of gift to be without merit. Reference to Item III of the will reflects the words: *"I give and devise* my entire estate in the manner set forth on the yellow handwritten page attached hereto." (Emphasis added). All of the specific devises of the testator's estate are contained on the yellow, handwritten page *including the Marlin Provision*. There are no other testamentary words of gift or devise except those contained in Item III and they are clearly referable to the Marlin Provision as well as the other clauses set out therein.

Appellant's third point of error is sustained.

In his fourth point of error, appellant contends that the trial court erred by finding that the Executor Kelly did not enter into a valid agency contract with him for the sale of the real estate passing to Inez Drummet under the will. Further, in his fifth and sixth points of error appellant contends that the trial court erred by finding that appellees Fielder and World/Houston, Inc. were not liable to him for interfering with his contract and contractual relationship with Executor Kelly to sell the land of appellee Drummet. In view of our finding that Marlin was a conditional beneficiary under the will, we need not discuss these remaining points of error.

We reverse the judgment of the trial court and render judgment on the basis of appellant's first three points of error and hold Dr. Robert P. Kelly, as Executor of the Estate of Paul W. Drummet, and Inez Drummet, liable to appellant Bill Marlin for money damages in the amount of six percent of the total sales price paid for the land by World/Houston, Inc. to the Estate of Paul W. Drummet, Deceased, plus legal interest thereon from the date of sale.

The judgment of the trial court is hereby reversed and judgment rendered accordingly.