Dr. Robert P. KELLEY, as Independent Executor of the Estate of Paul W. Drummet, et al., Petitioners,

v.

Bill MARLIN, Respondent.

No. C–3429.

Supreme Court of Texas.

June 25, 1986.

Rehearing Denied Sept. 10, 1986.

Fulbright & Jaworski, Fred M. Lange, Clarence E. Kendall, Jr. and Roger Townsend, Sellers, Berg & Mathews, W. Harold Sellers, Houston, for petitioners.

Grant Cook, Tom Cordell, Houston, Reynolds, Allen & Cook and Bruce Bennett, Austin, for respondent.

## ON MOTION FOR REHEARING

HILL, Chief Justice.

Our opinion and judgment of May 8, 1985 are withdrawn and the following is substituted. The motion for rehearing is granted.

Bill Marlin brought this declaratory judgment action to construe a clause in the will of Paul W. Drummet. The case was tried to the court which rendered a take-nothing judgment against Marlin as to the estate's executor, Dr. Robert P. Kelley, as to the widow of Mr. Drummet, Inez Drummet, and as to third parties who were involved in the purchase of land from the Drummet Estate. The court of appeals reversed the trial court's judgment and rendered judgment in favor of Marlin. 678 S.W.2d 582. The question before this court is whether Marlin is a conditional beneficiary under Mr. Drummet's will. We hold that Marlin is a conditional beneficiary and affirm the judgment of the court of appeals.

Mr. Drummet had a close professional and personal friendship with Marlin for approximately twenty years, during which time Marlin served as Mr. Drummet's real estate agent in all transactions concerning his land. Mr. Drummet relied on Marlin's advice in all real estate matters. Marlin was present at the hospital when Mr. Drummet's will was executed. The day before Mr. Drummet executed his will, he signed an earnest money contract for the sale of a portion of his land. This contract named Marlin as Mr. Drummet's real estate agent. Mr. Drummet had also appointed Marlin to the Architectural Control Committee for land which Mr. Drummet owned in the area of the Houston Intercontinental Airport.

Mr. Drummet executed the will in question approximately two months before his death. The will contained five pages, four of which consisted of typewritten form pages with deletions and handwritten inser-

tions. In Item III of the will under the heading "DISPOSITION OF ESTATE", Mr. Drummet gave and devised his entire estate "in the manner set forth on the yellow handwritten page attached hereto." The yellow sheet contained four paragraphs. After making certain specific bequests in the first two paragraphs, Mr. Drummet left, in paragraph three, "[a]ll the rest of my property, real or personal, to my wife." The fourth and final paragraph, referred to by the parties as the "Marlin Provision," reads as follows:

> Bill Marlin is to be the exclusive real estate agent (6% commission) for the sale by my wife of any of the real estate passing to her hereunder and he shall have a right against the sales proceeds to her to collect that commission.

After Mr. Drummet died, Dr. Kelley, the executor, commenced dealing with Marlin to act as real estate agent for the sale of a substantial portion of the real estate inherited by Mrs. Drummet. Marlin posted the real estate for sale and began seeking a buyer. About nine months after Drummet died, Dr. Kelley engaged Garland Fielder, Mrs. Drummet's son by a prior marriage, to sell the identical real property marketed by Marlin. Approximately one year later, a substantial part of the real estate was sold for ten million dollars to World/Houston, Inc., a corporation in which Fielder was a fifty-one percent shareholder. Fielder collected a six percent commission on this sale pursuant to his commission agreement with Dr. Kelley. One year later, World/Houston, Inc. was sold to a third party for twenty-four million dollars. World/Houston, Inc.'s principal asset was the Drummet real estate. Marlin brought this suit against Dr. Kelley and Mrs. Drummet to collect the six percent commission from the sale of the land to World/Houston, Inc.

■ The testator's intent is the single most important factor in construing a will. *Huffman v. Huffman*, 161 Tex. 267, 270–71, 339 S.W.2d 885, 888 (1960). Since the parties agree that Drummet's will is unambiguous, parol evidence of what the testa-

tor intended is inadmissible. *Lehman v. Corpus Christi National Bank*, 668 S.W.2d 687, 689 (Tex.1984). However, extrinsic evidence of surrounding circumstances is admissible to ascertain the meaning of words used in the will. *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex.1971); *Huffman*, 161 Tex. at 271, 339 S.W.2d at 888.

■ In this case, the testator expressed his intent in clear, unambiguous, and mandatory language: "Bill Marlin *is to be* the exclusive real estate agent...and he *shall* have a right against the sales proceeds to her to collect that commission." (emphasis added). Evidence of Mr. Drummet's professional and personal relationship with Marlin was admissible extrinsic evidence of Mr. Drummet's surrounding circumstances.

■ We hold that the Marlin Provision made Marlin a conditional beneficiary and that Marlin's interest is an equitable charge upon the land devised to Mrs. Drummet if she sells it. *See Rubio v. Valdez*, 603 S.W.2d 346 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.). Mr. Drummet would not have used such unequivocal mandatory language as "he *shall* have a right against the sales proceeds to her to collect that commission" had he not intended to benefit Marlin. The Marlin provision does not detract from the efficacy of Mrs. Drummet's fee simple title, but instead creates an equitable charge upon the real estate devised to Mrs. Drummet.

■ Dr. Kelley and Mrs. Drummet argue that since the sale was made by Kelley as administrator it was not a sale "by my wife" within the terms of the Marlin provision. We are not persuaded by this argument. Section 37 of the Probate Code provides in part:

> When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, and all powers of appointment granted in such will, shall vest immediately in the devisees or legatees of such estate ... subject to the payment of the debts of the testator....

Tex.Prob.Code Ann. § 37 (Vernon 1980). Thus, title to the Drummet property vested

immediately in Mrs. Drummet as devisee upon the death of Mr. Drummet, subject only to the payment of estate debts and the equitable charge imposed by the Marlin provision which was operative if the property was sold by her. *White v. White*, 142 Tex. 499, 503, 179 S.W.2d 503, 505 (1944). It is elementary that Dr. Kelley, as independent executor, had the right of possession and a power of sale in the estate property to pay the estate's debts. *Freeman v. Banks*, 91 S.W.2d 1078, 1080 (Tex. Civ.App.—Fort Worth 1936, writ ref'd). Such right did not render this sale one not made by Mrs. Drummet within the meaning of this will and did not empower Dr. Kelley to act against the clearly expressed wishes of the testator and deprive Marlin of his right to collect the real estate commission against the sales proceeds from land inherited by Mrs. Drummet.

We affirm the judgment of the court of appeals and hold Dr. Robert P. Kelley, as Executor of the Estate of Paul W. Drummet, and Inez Drummet liable to Bill Marlin in the amount of six percent of the total sales price paid for the land by World/Houston, Inc. to the Estate of Paul W. Drummet, deceased, plus legal interest thereon from the date of the sale.

WALLACE, J., files a dissenting opinion in which CAMPBELL, SPEARS and RAY, JJ., join.

WALLACE, Justice, dissenting.

I respectfully dissent. Of course, the single most important factor in construing a will is the testator's intent. However, that intent cannot be given effect if it is in contravention of established law or public policy. *Frame v. Whitaker*, 36 S.W.2d 149, 120 Tex. 53 (1931). Thus, the question presented to this court is not only whether Paul Drummet intended to benefit Marlin by the so called "Marlin Provision" of his will, but whether he could do so in the manner under review within the present probate laws of this State. I would hold that the Marlin provision is invalid and deny Marlin's Motion for Rehearing.

## I. NATURE OF THE ESTATE DEVISED

When words of a will indicate an intent to make a clear gift, the language will be construed to devise the greatest estate possible, and the devise will not be limited by any subsequent provision that does not clearly and decisively limit the estate devised. *Haring v. Shelton*, 122 S.W. 13 (Tex.1909). In the paragraph immediately before the Marlin Provision, Paul W. Drummet left "... all the rest of my property, real and personal, to my wife." This language clearly evidences Drummet's intent to pass fee simple title to his wife. Thus, the Marlin Provision is precatory unless it clearly and decisively limits Mrs. Drummet's fee estate. TEX.PROP.CODE ANN. § 5.001 (Vernon 1984) (formerly TEX.REV.CIV.STAT.ANN. art. 1291 (Vernon 1980)).

Such a limitation may be imposed by language which either (1) detracts from the devisee's use and enjoyment of the estate, thereby making the devise less than an absolute fee estate, or (2) creates a charge against the estate devised. A charge is simply a duty imposed on the devisee to pay another legacy conveyed by the will. The charge created may be either on the devisee personally or upon the land devised. In either case, the language of the will must establish both the duty to pay and the legacy to be paid clearly and unequivocally.

## II. EQUITABLE CHARGE AS A LIMITATION

The majority holds that the Marlin Provision makes Marlin a conditional beneficiary, giving rise to the equitable charge. I disagree. It seems to me that in so holding, the majority has totally ignored the significance of Drummet's use of the term "commission" not once, but twice in the disputed portion of the will.

By its terms, the Marlin Provision grants Marlin only a right to a "commission." A "commission" is "the recompence, compensation or reward of an agent, salesman,

[etc.], when the same is calculated as a percentage of the amount of his transactions or on the profit to the principle." BLACK'S LAW DICTIONARY 246 (5th ed. 1979). Webster's defines "commission" as "... a fee paid to an agent or employee for transacting a piece of business or performing a service ...." WEBSTER'S NEW COLLEGIATE DICTIONARY (1975). In short, a commission is nothing more than consideration for services performed, thereby precluding the idea of a gift. *Williams v. McKnight*, 402 S.W.2d 505 (Tex.1966); *Kearse v. Kearse*, 276 S.W. 690 (Tex. Comm'n.App.1928, jdgmt. adopted).

The case relied on by the majority to authorize an equitable charge is distinguishable. In *Rubio v. Valdez*, 603 S.W.2d 346 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.), the court distinguished between language which creates a condition and that which imposes an equitable charge on a devise. There, the will devised the real estate of the testator to Jesus Valdez "... upon his paying to my other children, ... the total sum of Ten Thousand and NO/100 ($10,000) Dollars, ...." Relying on this court's opinion in *Haldeman v. Oppenheimer*, 126 S.W. 566 (Tex.1910), the *Rubio* court determined: "Where the real estate is devised to the person who by the will is directed to pay the *legacy*, it has frequently been decided that such legacy is an equitable charge upon the real estate so devised." (Emphasis added). *Rubio* at 348. *Haldeman*, like *Rubio*, involved wills which clearly enumerated *specific* legacies. I find no authority where an equitable charge was imposed based on language creating bilateral duties and obligations between two devisees. Indeed, I find it difficult to conceive of how such language could clearly and decisively create a legacy from which an equitable charge may arise.

To interpret the Marlin Provision as bequeathing such a specific legacy would be inappropriate. First, this would directly contradict the "commission" language. Further, after the residuary of an estate is given, there is simply nothing left to give. Finally, the two cases cited by the court of appeals validating conditional gifts are not applicable. Each of those cases involved a limitation on the devisee's use and enjoyment of the estate, not by way of an equitable charge.

In *Minor v. Hall*, 225 S.W. 784 (Tex.Civ. App.—Galveston 1920, writ dism'd), the will bequeathed certain property "... this to hold good if Fannie does as I request her." (Fannie was to pay certain funeral debts and carry out other monetary conditions.) In *Messer v. Carnes*, 71 S.W.2d 580 (Tex.Civ.App.—Waco 1934, no writ), the court upheld a conditional bequest conditioned upon donee's support and care of the testatrix for life. Both of these cases involve a will providing for a true conditional bequest. That is, the beneficiary was entitled to the bequeathed property upon a stated condition that, if not fulfilled, would divest the donee's interest. This divestiture is, of course, the essence of a condition. In the present case, there is no language which could be construed as an intent to divest Mrs. Drummet of her interest in the event the commission was not paid. At the same time, Marlin's right to a commission was conditioned upon his performing duties as a real estate agent. That is, he had to produce a ready, willing and able buyer for the property. That condition was not fulfilled.

The case most analagous to the situation here is *Mason & Mason v. Brown*, 182 S.W.2d 729 (Tex.Civ.App.—Dallas 1944, writ ref'd w.o.m.). In *Brown*, the testator executed an otherwise proper will with a provision which read: "I appoint Mason & Mason attorneys for Elizabeth Brown [the beneficiary of the estate]." Soon after the will was probated, she became dissatisfied with the firm and discharged them. Although noting that the case was one of first impression in Texas, the court stated that "Where presented, the courts uniformly held that such a provision was merely suggestive, precatory in nature, and not binding upon the executor." Id. at 733. In so holding, the court noted that "There is no such office or position known to the law as 'attorney of an estate.'"

It is clear to me that Drummet's intent was to compensate Marlin for his services as real estate agent. Had he wanted to "give" Marlin 6% of the sales proceeds, he would not have framed it in terms of a commission. Since he did not act as real estate agent in the sale of the property, Marlin is entitled to nothing under the will. The intent of the testator must be drawn from the will, not the will from the intent. *Huffman v. Huffman,* 339 S.W.2d 885 (Tex.1960). Furthermore, since there is no such thing in the law as "real estate agent of an estate," the testator was precluded from imposing such a binding duty on either Marlin or Mrs. Drummet.

I would hold that the Marlin Provision attempts to create an executory agency contract between Marlin and Mrs. Drummet. I would further decline to recognize, as a matter of law, that a will purporting to devise a fee simple may be used to impose contractual obligations on two non-consenting parties. Rather, I would deem such language to be merely suggestive or precatory in nature.

### III. RESTRAINT ON ALIENATION

There is another, even more compelling, reason that I would deem the Marlin Provision unenforceable.

A fee simple estate is said to be "perfect" ownership. *County School Trustees v. Free,* 154 S.W.2d 935 (Tex.Civ.App.—Texarkana 1941, writ ref'd w.o.m.). The owner is entitled to the entire property with unconditioned powers of disposition during his life and descending to his heirs and legal representatives upon his death intestate. *Field v. Rudes,* 204 S.W.2d 1 (Tex.Civ.App.—El Paso 1947), *rev'd on other grounds* 204 S.W.2d 5. "Perfect" ownership is the right to receive all of the fruit of the property and the right to freely dispose of the property. *Cartwright v. Cartwright,* 18 Tex. 626 (1857). Unlimited power of alienation in the holder is a necessary incident to a fee estate. *Bouldin v. Miller,* 28 S.W. 940, 941 (Tex.1894). To convey in fee simple means to convey the land in its entirety without any encumbrance or without any conflicting claims of any other person against it. *Veselka v. Forres,* 283 S.W. 303 (Tex.Civ.App.—1926, no writ).

The "condition" mandated by the Marlin provision forced Inez Drummet against her will to employ Bill Marlin to perform a non-delegable duty. Such construction is contrary to the established law of both contracts and wills. In contract cases, this court as well as courts in other jurisdictions have held that certain duties are non-delegable. Three classes of duties are non-delegable: (1) duties which call for the personal services of the original obligor; (2) duties premised on the artistic skill or unique abilities of a party such as a contract to paint a picture; and (3) duties which involve a close personal relationship such as duties owed by an attorney to his client, or a physician to his patient. RESTATEMENT (SECOND) CONTRACTS § 318, Comment c and illustrations 5–7; CALAMARI & PERILLO, *The Law of Contracts,* §§ 18–25 (2nd ed. 1977); *Allen v. Camp,* 106 S.W. 315 (Tex.1908).

If the Marlin Provision were construed to be mandatory, the will would both bequeath a benefit to Marlin and delegate duties to Marlin and to Inez Drummet. Inez Drummet would have the duty to use Marlin as the exclusive real estate agent if she wished to sell any land she inherited from her late husband, and Marlin would have the duty to find a ready, willing, and able buyer. Thus, this "conditional bequest" would create the same relationship between Bill Marlin and Inez Drummet as if they had entered into an executory exclusive real estate contract.

An exclusive real estate contract would require Bill Marlin to perform personal services for Inez Drummet and would create a fiduciary relationship of trust and confidence between Marlin and Drummet. *Ogden v. Yates Estate,* 154 S.W.2d 215 (Tex. Civ.App.—Austin 1941, writ ref'd w.o.m.).

Rules in contract cases protect parties from being forced into these types of personal relationships without the consent of both parties. *See, e.g., Allen v. Camp* at

316 (a contract that imposes a non-delegable duty on one party cannot be assigned by either party); *Cleveland v. Williams*, 29 Tex. 204 (1867) (a contract that imposes a non-delegable duty on one party will terminate by operation of law if either party to the contract dies). Each person has unique qualities, and each person has unique frailities. Tempers, personalities, and abilities vary from person to person. Because people are unique, personal relationships are unique. Because non-delegable duties involve personal relationships, contract law protects people from being forced into these relationships without their consent. Paul Drummet did not indicate by his will that he intended to force his wife into a personal, fiduciary relationship with Bill Marlin.

Probate law protects beneficiaries not only from being forced into unwanted relationships, but also against undue restrictions on their right to maintain and dispose of their property. The United States Supreme Court, as well as courts of this State, have consistently held that restraints on the power of alienation, when incorporated in a deed or will otherwise conveying a fee simple right to the property, are void.

In *Potter v. Couch*, 141 U.S. 296, 11 S.Ct. 1005, 35 L.Ed. 721 (1890), the Supreme Court stated:

> The right of alienation is an inherent and inseparable quality of an estate of fee simple. In a devise of land in fee simple, therefore, a condition against all alienation is void, because repugnant to the estate devised. For the same reason, the limitation over, in case the first devisee shall alien, is equally void, whether the estate be legal or equitable. And on principle, and according to the weight of authority, a restriction, whether by way of condition or of devise over, not forbidding alienation to particular persons or for particular purposes only, but against any and all alienation whatever during a limited time, of an estate in fee, is likewise void, as repugnant to the estate devised to the first taker, by depriving

him during that time of the inherent power of alienation.

*Id.*, 141 U.S. at 315, 11 S.Ct. 1010, 35 L.Ed. at 732.

Texas courts have held provisions invalid as restraints on alienation in situations where disposition is totally forbidden, *Diamond v. Rotan*, 58 Tex.Civ.App. 263, 124 S.W. 196 (1910, writ ref'd); where devised property could not be sold during the lifetime of the beneficiary, *Seay v. Cockrell*, 115 S.W. 1160 (Tex.1909); *Frame v. Whitaker*, 120 Tex. 53, 36 S.W.2d 149 (Tex. 1931); *O'Connor v. Thetford*, 174 S.W. 680 (Tex.Civ.App.—San Antonio 1915, error ref'd); where property devised to a minor could not be sold until the minor reached majority, *Bouldin v. Miller*, 28 S.W. 940 (Tex.1894); *Laval v. Staffel*, 64 Tex. 370 (1885); where disposition required the consent or joinder of designated persons other than the devisee, *Pritchett v. Baggett*, 257 S.W.2d 776 (Tex.Civ.App.—El Paso 1953, writ ref'd), *Ford v. Allen*, 526 S.W.2d 643 (Tex.Civ.App.—Austin 1975, no writ), *Kitchens v. Kitchens*, 372 S.W.2d 249 (Tex. Civ.App.—Waco 1963, writ dism'd); where property was devised in terms of fee simple, but only so long as the wife remained a widow, *Haring v. Shelton*, 122 S.W. 13 (Tex.1909); where the beneficiary's right to dispose of the property was limited to sell to another relative, *Dodson v. Dodson*, 299 S.W.2d 775 (Tex.Civ.App.—Austin 1957, no writ); and, where the will granted a purchase option to specified individuals. *McGaffey v. Walker*, 379 S.W.2d 390 (Tex. Civ.App.—Eastland 1964, writ ref'd n.r.e.), *Trustees of Casa View Assembly of God Church v. Williams*, 414 S.W.2d 697 (Tex. Civ.App.—Austin 1967, no writ).

The theme of these cases is clear and consistent: in the context of a will which devises a fee simple estate, a provision restraining the beneficiary's right of alienation is repugnant to the estate devised. Thus, it should be considered void and unenforceable unless its terms clearly and decisively reflect an intent to limit the estate, *i.e.*, an intent not to devise a fee

simple, or an intent to place a specific condition on the vesting of the fee estate.

Although the restraint on alienation mandated by the Marlin Provision does not completely preclude Mrs. Drummet from disposing of the property, it does require her to deal through a specific agent. In many ways, this restraint could be as distasteful to Mrs. Drummet as a total prohibition. In any event, if held to be mandatory, the provision prevents her from freely and voluntarily disposing of her property as she sees fit. As such, it constitutes a restraint on alienation repugnant to the unqualified fee simple estate Mr. Drummett clearly intended her to have.

I would hold the Marlin Provision void and unenforceable as contrary to law and public policy.

CAMPBELL, SPEARS and RAY, JJ., join in this dissent.