Lelah May THOMASSON, Catherine Harris, and Joe Eckley Kirk, Jr. Independent Executor, Appellants,

v.

Warren Dale KIRK and Mona Beth Bogue, Appellees.

No. B14–92–00563–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 1, 1993.

Rehearing Denied Sept. 9, 1993.

George D. Gordon, Richard S. Browne, Leonard J. Meyer, Houston, for appellants.

William T. Synpes, Houston, for appellees.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a Declaratory Judgment interpreting the will of Birch Benton Kirk, deceased. The trial court found for appellees, a nephew and niece of

the testator, who were conditional beneficiaries under the will. Appellants represent the estate interests of Blanche Myrtle Kirk, a deceased sister of the testator and a primary beneficiary named in the will, but who died before the testator's estate was distributed.

The primary issue involved is whether the testator intended to, and could, legally condition his testamentary gifts to his siblings so as to require that each of them, in order to inherit, must be living at the time his estate was ready to be distributed. And if so, was his intent effectively expressed in the will? The trial court by its judgment answered yes to each of these questions. We affirm. The facts and our analysis follow.

On December 6, 1986, the testator, Birch Benton Kirk, died, leaving a will, which was entered for probate on February 4, 1987. Appellant Joe Eckley Kirk, Jr., was appointed Independent Executor. At the time the testator made his will, his brother, Joe Eckley Kirk, and three sisters, Blanche Myrtle Kirk, Rhea Gertie Short, and Lelah May Thomasson, were living, and were expressly named in the will. However, Joe Eckley Kirk and Rhea Gertie Short predeceased the testator, with no change being made in the will to delete their names. Thus, when the testator died on December 6, 1986, he was survived by his two sisters, Blanche and Lelah May, as well as eight nephews and seven nieces. Blanche died in 1991, and at that time, the administration of the decedent's estate had been initiated, but no portion of the estate had been divided or distributed to the devisees under the will. Upon Blanche's death, Appellant Catherine Harris was appointed Independent Executor of her estate.

The testator's will states in pertinent part:

"This is written as my Last Will and Testament. After paying my just debts and funeral expenses, it is my *Will and desire* that my brother, JOE ECKLEY KIRK, my sisters, BLANCHE MYRTLE KIRK, RHEA GERTIE SHORT AND LELAH MAY THOMASSON, *shall* each take one-sixth (⅙th) of my estate, *but in the event any of them predecease me or die before the administration of my estate is completed and divided, the share or part remaining in my estate that would have gone to such brother or sister shall revert and become a part of the residue of my estate and go to my eight nephews and seven nieces in equal shares or to their children per stirpes.* And, after paying my debts and funeral expenses, *I give, devise and bequeath* to each of my sisters and my brother above named a one-sixth (⅙th) of my estate, but in the event my brother or any sister named herein as beneficiaries should predecease me, the share that would have gone to such brother or sister shall go to my eight nephews and seven nieces in equal shares or to their children per stirpes. *And* should my property devised and bequeathed to my said brother and sisters *remain in my estate undivided at the decease of any of them,* the share or part remaining in my estate *shall* revert to and become a part of the residue of my estate and go to my nephews and nieces in equal shares or to their children per stirpes." (Emphasis added.)

The probate court found that the language "completed and divided" meant that if any one of the siblings of the testator was not living at the time the estate was divided and distributed, then that portion of the estate which was bequeathed to that sibling was to become part of the residue of the estate which passed to the eight nephews and seven nieces. Thus, the probate judge found that although Blanche Myrtle Kirk survived the death of the testator, she died before the estate was "completed and divided," and therefore, her share passed, not under her will, but passed to the testator's nieces and nephews as provided in his will.

Appellants, the testator's sister and the executors of the estates of the testator and Blanche Myrtle, contend that the trial court erred in the above interpretation of testator's will. They argue that the phrase "will and desire" is merely precatory, and does not effectively transfer any interest in

the estate to the nieces and nephews. Appellants claim that the language is merely expressing the testator's wish, but has no legal effect or authority to transfer the property. Instead, appellants assert that the next, or "third" sentence in the will, which states, "I give, devise and bequeath to each of my sisters and my brother" is the only effective language which can legally be applied to dispose of the estate. Appellants thus contend that each of the testator's siblings is to receive one-sixth of the estate, provided he or she does not predecease the testator. Only if one of the siblings died before the testator, would that person's share pass equally to testator's nephews and nieces. Otherwise, it would vest immediately in the surviving sibling. Appellants reason that the trial court erred in giving effect to the second sentence because it merely expressed a wish or desire, and was, therefore, legally impotent. Because of its precatory nature, appellants assert that such language cannot limit the vesting of any sibling's interest who survived the death of the testator. They conclude it is inconsistent with the mandatory language required of testamentary transfers and is, therefore, without legal significance under testamentary law. For the reasons set out hereafter, we disagree with that conclusion.

■■■ Our guiding principle is testamentary intent. The words "It is my desire," standing alone, are precatory in nature and not mandatory conveying language. *See Bergin v. Bergin*, 159 Tex. 83, 315 S.W.2d 943 (Tex.1958); *Fitzgerald v. Agnew*, 402 S.W.2d 811 (Tex.Civ.App.—Texarkana 1966, no writ); *Hunt v. Hunt*, 329 S.W.2d 488 (Tex.Civ.App.—San Antonio 1959, no writ). However, the phrase "my will" is generally construed to be mandatory and reflective of the testator's intent. *Leopold v. Sochat*, 303 S.W.2d 840 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.). In our view, it then follows that the word "will" used in the same phrase as "desire," is also mandatory, not only because the word "will" is used, and appears first, but also because of the context in which the phrase is expressed, namely, that the sentence does purport to convey property conditioned on certain circumstances. *See Woods v. Wedgeworth*, 453 S.W.2d 385, (Tex.Civ.App.—El Paso 1970, no writ). This is supported by the remainder of the internal language such as *"shall* revert and become a part of the residue of my estate and go to my nephews and nieces in equal shares or to their children per stirpes." (Emphasis added.)

Appellants, nevertheless, assert that the "second" sentence containing the phrase "will and desire" is merely a conflicting, habendum-type clause which is often found in real property and mineral deeds. We find this comparison to habendum clauses somewhat strained. The typical habendum clause follows the granting or conveying clause in deeds and begins with the words "to have and to hold." Such clauses define the extent of the ownership, but they cannot conflict or be repugnant to the conveying or granting clause. If they do so conflict, such clauses are disregarded. *Veltmann v. Damon*, 701 S.W.2d 247 (Tex. 1985). However, as stated, conflicts raised by habendum clauses generally arise in the context of conveyances in mineral and real property deeds. They are not usually relevant in an analysis of testamentary intent or will construction. But even if we accept the appellants' analogy for purposes of argument, it does not apply to the clauses in the will before us. They are in the nature of testamentary conditions, and as such, are enforceable. They are not repugnant to the testamentary transfer, but simply a conditional part of it as intended by the testator.

■■ Therefore, contrary to appellant's conclusion, we find the phrase "will and desire" to be mandatory testamentary language which clearly expresses the testator's intent to condition the testamentary dispositions on whether his siblings predecease him *or die before the completion and distribution of his estate.* If either of the conditions occur, the share that would have gone to that sibling shall pass to the nieces and nephews.

Nor do we find these three sentences to be in conflict as appellants suggest. We

interpret them as a harmonious whole when read in context together. For example, immediately following the third sentence which appellants assert should be read in isolation as the effective transfer language, is the continuing statement by testator: *"And* should my property devised and bequeathed to my said brother and sisters remain in my estate *undivided* at the decease of any of them, the share or part remaining in my estate *shall* revert to and become a part of the residue of my estate and go to my nephews and nieces in equal shares or to their children per stirpes." This sentence is a continuation of the preceding one, and relates the same thoughts and intentions on behalf of the testator as does the second sentence, which appellants challenge. It is the reaffirmed expression of the testator's intent.

 Thus, even if we assume *arguendo* that the sentences are somehow in conflict, the finding by the probate court would still be correct. If the provisions of a will are inconsistent to the point that all such provisions cannot be given effect, then effect should be given to those provisions most nearly comporting to the intent of the testator as gleaned *from the entire will. See Roberts v. Drake*, 380 S.W.2d 657 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.). It is fundamental that the intention of the testator is the paramount consideration and determining factor in interpreting a will. A will represents the testator's unilateral, final, and ultimate legal act. Thus, the testator's intent becomes the single most important factor in any controversy involving his or her will. *Marlin v. Kelly*, 678 S.W.2d 582, 587 (Tex.App.—Houston [14th Dist.] 1984), *aff'd.*, 714 S.W.2d 303 (Tex.1986).

With this in mind, we find that by reading all of the testator's sentences together, his intent is clear. He repeated his condition twice, as if to accentuate it: to take under the will, his siblings must not die before the estate is divided. "Divided" logically means parceled or distributed completely. Only by isolating certain of his words in a kind of hypertechnical vacuum, could we legally obscure his intent.

It is, therefore, clear that his sister, Blanche, fell within one of the limiting conditions. Although she survived the testator, she died before the estate was distributed (or divided), and her portion legally passes to the nieces and nephews pursuant to the testator's expressed intent.

Such conditioning by the testator of his intended testamentary gifts based on his devisees surviving for a time or until the occurrence of an event, is within his testamentary authority pursuant to TEX. PROB.CODE ANN. art. sec. 47(c) & (f) (Vernon 1980). A testator may explicitly provide that a devisee survive the testator or further survive the testator for a stated period in order to take under the will, and may make such provisions that are different from the provisions of Sec. 47 of the Probate Code. *Id.* This is precisely what the testator did in this case.

Accordingly, we find that the trial court did not err in its interpretation of the meaning of the words used by the testator to reflect his intent. The judgment of the probate court is, therefore,

AFFIRMED.