COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-003-CV



 

ESTATE OF CHARLES A.
COOK,                                                            

DECEASED

 

                                        NO.
2-08-004-CV

 

ESTATE OF NONA G. AKARD,

DECEASED

                                              ------------

 

           FROM
COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant
James M. Cotten, executor of two separate estates, appeals the trial court=s orders
that he distribute the estates=
remaining assets to the beneficiary, appellee First United Methodist Church of
Weatherford (the Church).  We affirm.








I.    
BACKGROUND

A.     The Will of Nona G. Akard

Nona G.
Akard died on December 19, 1972.  Her
will designated appellant James M. Cotten, a licenced attorney, as the
independent executor.  On January 16,
1973, Cotten was appointed and qualified as the independent executor of the
Estate of Nona G. Akard (the Akard Estate). 
Akard=s will contained language
stating:  AI direct
my executor to retain 1/3 of the remainder of my estate and that it be used as
my executor and the Trustees of the First Methodist Church of Weatherford,
Texas shall agree for permanent improvements to the First Methodist Church of
Weatherford, Texas.@

B.     The Will of Charles A. Cook

Charles
A. Cook died on April 11, 1987.  His will
also designated Cotten as the independent executor.  On May 5, 1987, Cotten was appointed and
qualified as independent executor of the Estate of Charles A. Cook (the Cook
Estate).  Cook=s will
contained language stating that A[t]he
remainder of my estate is to be used upon agreement by my executor hereinafter
named and Raymond Nolen and the Board of Trustees of the First United Methodist
Church of Weatherford, Texas, for the erection of some type of permanent
improvement to the church property as a memorial to Thelma Cook and Lorita
Simmons Cook.@








C.     Distributions from the Estates and Present Values

Cotten
has made distributions totaling approximately $19,000 from the Akard Estate to
the Church.  As of May 2006, the value of
the Akard Estate was approximately $34,000 plus the unknown value of certain
stocks.  With the exception of one
specific bequest that is not at issue here, no distributions have been made to
the Church from the remainder of the Cook Estate.  The value of the Cook Estate as of May 2006
was approximately $30,000 plus the unvalued portion of a silver coin
collection.  Cotten retains the remaining
assets of both estates. 

D.     Trial Court Proceedings and Distributions

The
Church filed motions in both estates in January 2004 requesting that the court
compel Cotten to render an accounting. 
In September 2007, Cotten rendered an accounting in both estates.  The Church filed objections to both
accountings and sought to compel the distribution of both estates on the ground
that there was no further need for continuing the estates=
administrations. 

Following
a bench trial, the trial court approved the accountings filed by Cotten and
ordered the distribution of both estates by two separate orders providing, in
part:








The court . . . finds that there
is no necessity for the continued administration of the estate and orders that
all of the assets of the estate be distributed to First United Methodist Church
of Weatherford, by and through the Chairman of its Board of Trustees.  Said distribution shall be completed within
45 days of this order.

This appeal followed.

II.     DISCUSSION

Cotten
contends that the trial court=s
finding that there was no continued necessity for administration of the estates
is not supported by legally or factually sufficient evidence and that the trial
court erred as a matter of law by ordering the distributions of the estates to
the Church based on that finding. 

A.     Applicable Law Regarding
Court-Ordered Distributions

Section
149B of the Texas Probate Code provides, in relevant part, as follows:

(a) . . . [A]t any time after the expiration of two years from the
date that an independent administration was created and the order appointing an
independent executor was entered, a person interested in the estate may
petition the county court . . . for an accounting and distribution. . . .
The accounting shall include the information that the court deems necessary to
determine whether any part of the estate should be distributed.

 

(b) . . . [U]nless the court finds a continued necessity for
administration of the estate, the court shall order its distribution by the
independent executor to the persons entitled to the property.[2]








A distribution may not be made
under section 149B when demand for distribution is premature,[3]
the terms of the will prohibit it, or there is a continued need for
administration.[4]  In the absence of these recognized
exceptions, an independent executor has no right to withhold a beneficiary=s
property or to dissipate the estate by prolonged administration with its
attendant fees and expenses and the court Ashall@ order
distribution.[5]








It is a
fundamental rule that the intention of the testator is the paramount
consideration and the determining factor in the interpretation of the will.[6]  The testator=s last
will represents his unilateral, final, and ultimate legal decision.[7]  Thus, his intent becomes the single most
important factor in any controversy involving a will.[8]  Although a testator=s
intention must be gathered primarily from the terms of the will itself, any
material fact or circumstance that tends to shed light on the intention of the
testator may be considered where necessary to resolve a doubt in this respect.[9]  We will avoid a construction of a
testamentary provision that has the effect of defeating or thwarting the
intention and purpose of the testator as expressed in the will as a whole.[10]








When, as
here, a will is plain in its terms and unambiguous in its meaning as to the
lawful intentions of the testator, it is a legal question for the court to
interpret the will and carry out the testator=s
wishes.[11]  It is presumed that the testator placed
nothing superfluous or meaningless in his will and that he intended every part,
sentence, clause, and word to have a meaning and to play a part in the
disposition of his property.[12]  A provision, clause or word will be ignored
only where it is clearly illegal or clearly contrary to the general intention
of the testator.[13]

The
bequests at issue are dependent upon Cotten and the Trustees reaching agreement
regarding the use of the estates=
funds.  A bequest that is dependent upon
the occurrence of an event is a conditional bequest.[14]  Where a conditional bequest requires the
donee to perform some service or take some action as a condition to receiving
the legacy, and the donee has performed or partially performed, but the actions
of the executor have prevented the donee from complying or receiving the
legacy, the donee is nevertheless entitled to the legacy even though it may not
have literally performed the condition.[15]  Otherwise, the testator=s wishes
may be thwarted by an executor whose actions ensure that the condition
precedent will never come to pass.[16]








B.     Standard of Review

In a
trial to the court where no findings of fact or conclusions of law are filed,
the trial court=s judgment implies all findings
of fact necessary to support it.[17]  Where a reporter=s record
is filed, however, these implied findings are not conclusive, and an appellant
may challenge them by raising both legal and factual sufficiency of the
evidence.[18]  Where such issues are raised, the applicable
standard of review is the same as that to be applied in the review of jury
findings or a trial court=s findings of fact.[19]  The judgment must be affirmed if it can be
upheld on any legal theory that finds support in the evidence.[20]








We may
sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact, (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact, (3) the evidence offered to prove a vital fact is no more than a
mere scintilla, or (4) the evidence establishes conclusively the opposite of a
vital fact.[21]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.[22]








Anything
more than a scintilla of evidence is legally sufficient to support the finding.[23]  When the evidence offered to prove a vital
fact is so weak as to do no more than create a mere surmise or suspicion of its
existence, the evidence is no more than a scintilla and, in legal effect, is no
evidence.[24]  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.[25]

When
reviewing an assertion that the evidence is factually insufficient to support a
finding, we set aside the finding only if, after considering and weighing all
of the evidence in the record pertinent to that finding, we determine that the
evidence supporting the finding is so weak, or so contrary to the overwhelming
weight of all the evidence, that the answer should be set aside and a new trial
ordered.[26]

C.     No
Continued Necessity for Administration of the Estates








The
Akard Estate has been open for over thirty-five years.  The Cook Estate has been open for over twenty
years.  In that time, Cotten has filed
only two accountings in each estate, one in approximately 1992 and one in 2007,
both only as the result of court orders. 
The accountings reveal that Cotten has never disbursed any monies to the
Church from the Cook Estate (save and except a specific bequest in the amount
of $2,651.40) and has disbursed only approximately $19,000 from the Akard
Estate.  According to the 2007
accountings, there remains an asset balance of approximately $34,000 plus an
unknown value of stock in the Akard Estate and an asset balance of
approximately $30,000 (plus an unvalued portion of a silver coin collection,
which Cotten revealed for the first time at the hearing he had at his home) in
the Cook Estate.

The
record further shows that Cotten has never proposed projects to the Trustees to
be funded by the estates.  In 1992, Dan
Vogel, chairman of the Board of Trustees of the Church, requested from Cotten
funds from the estates for use in reconstruction of the Church tower, for a
sound system, for chimes, and for the organ. 
Cotten refused to fund all of the projects except the organ.  In 2004, Cotten denied a Trustees= request
for funds from the estates for use in constructing a porte cochere where
handicapped and elderly members of the Church could enter and exit the building
in bad weather.  In addition, Cotten
refused a request for gifts from the estates to defray the costs of burying the
electrical service connection to church buildings.








We hold
that there is legally and factually sufficient evidence to support findings by
the trial court that the Church had performed or partially performed its
obligations under the wills by presenting proposed projects to Cotten for
funding by the estates; Cotten had frustrated these efforts by failing to
provide information about the assets of the estates which would assist the
Church in preparing such requests and by failing to reasonably agree to
requests that were consistent with the terms of the testators=
bequests; Cotten had thwarted the testators= intent
by failing to take affirmative steps to execute the wills within a reasonable
amount of time after he was appointed independent executor; the conditions
precedent of Cotten=s agreement to the specific
projects should be excused; and the distribution of the estates=
remaining assets to the Church would fulfill the testators= intent.[27]  Therefore, the trial court did not err in
finding that there is no necessity for the continued administration of the
estates.

Accordingly,
we overrule both of Cotten=s issues
on appeal.








III.     CONCLUSION

The trial court=s orders
that the estates= remaining assets be distributed
to the Church are affirmed.

 

PER CURIAM

PANEL:  CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

 

DELIVERED:  November 25, 2009











[1]See Tex. R. App. P. 47.4.





[2]Tex. Prob. Code Ann. ' 149B(a)B(b) (Vernon 2003).





[3]Id.  The parties do not dispute that the Church is
Aa person interested in
the estate@ under section 149B or
that the Church=s demand for distribution
is not premature.





[4]Id.; In re Estate of
Lewis, 749 S.W.2d 927, 929B30 (Tex. App.CTexarkana 1988, writ denied); Oldham v. Keaton,
597 S.W.2d 938, 944 (Tex. Civ. App.CTexarkana 1980, writ ref=d n.r.e.).





[5]Tex. Prob. Code Ann. ' 149B(b); Lesikar
v. Rappeport, 809 S.W.2d 246, 249 (Tex. App.CTexarkana 1991, no writ)
(op. on reh=g); Estate of Lewis,
749 S.W.2d at 931.





[6]Marlin v. Kelly, 678 S.W.2d 582, 586
(Tex. App.CHouston [14th Dist.]
1984), aff=d, 714 S.W.2d 303 (Tex.
1986).





[7]Id.





[8]Id. (citing Huffman v.
Huffman, 161 Tex. 267, 270, 339 S.W.2d 885, 888 (1960)).





[9]Id. at 586B87 (citing Stewart v.
Selder, 473 S.W.2d 3, 7 (Tex. 1971)).





[10]Id. at 587.





[11]Id.





[12]Id.





[13]Id. (citing Peden Iron
& Steel Co. v. Lockett, 131 Tex. 287, 288B89, 115 S.W.2d 405, 406
(1938)).





[14]See id. at 589.





[15]Id.; Lange v. Houston
Bank & Trust Co., 194 S.W.2d 797, 801B02 (Tex. Civ. App.C1946, writ ref=d n.r.e.).





[16]Marlin, 678 S.W.2d at 587, 589B90; Lange, 194
S.W.2d at 801B02.





[17]Pharo v. Chambers County,
Tex.,
922 S.W.2d 945, 948 (Tex. 1996); In re Estate of Rhea, 257 S.W.3d 787,
790 (Tex. App.CFort Worth 2008, no
pet.).  Cotten contends that the trial
court=s orders contain findings
of fact because they state that the court Afinds@ there is no necessity for continued
administration of the estates.  We
disagree.  The trial court ruled on the
Church=s request that the
estates be distributed based on no continued need for their administration; it
did not enter findings of fact.  See,
e.g., In re Guardianship of Boatsman, 266 S.W.3d 80, 88 (Tex. App.CFort Worth 2008, no pet.)
(applying standard applicable to judgment following bench trial in which no
findings of fact are filed, even though trial court signed order Afinding@ appellant was incapacitated
and appointing guardian as requested by the Department of Aging and Disability
Services).





[18]BMC Software Belg., N.V.
v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002); Estate of Rhea, 257 S.W.3d at 790.





[19]Roberson v. Robinson, 768 S.W.2d 280, 281
(Tex. 1989).





[20]Worford v. Stamper, 801 S.W.2d 108, 109
(Tex. 1990).





[21]Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040
(1999); Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 Tex. L. Rev. 361, 362B63 (1960).





[22]Cent. Ready Mix Concrete
Co. v. Islas,
228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d
802, 807, 827 (Tex. 2005).





[23]Cont=l Coffee Prods. Co. v.
Cazarez,
937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby, 935 S.W.2d 114, 118
(Tex. 1996).





[24]Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983).





[25]Rocor Int=l, Inc. v. Nat=l Union Fire Ins. Co., 77 S.W.3d 253, 262
(Tex. 2002).





[26]Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986) (op. on reh=g); Garza v. Alviar,
395 S.W.2d 821, 823 (Tex. 1965); In re King=s Estate, 150 Tex. 662, 664B665, 244 S.W.2d 660, 661
(1951).





[27]Because the evidence
supports a finding that the conditions precedent of agreement are excused as a
result of Cotten=s unreasonable refusal to
agree to the Church=s requests, the trial
court has not, as Cotten contends, rewritten the wills.  See, e.g., Marlin, 678 S.W.2d
at 589B90; Lange, 194
S.W.2d at 801B02.