COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-08-003-CV

ESTATE OF CHARLES A. COOK,
DECEASED

NO. 2-08-004-CV

ESTATE OF NONA G. AKARD,
DECEASED

------------

FROM COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant James M. Cotten, executor of two separate estates, appeals the trial court's orders that he distribute the estates' remaining assets to the beneficiary, appellee First United Methodist Church of Weatherford (the Church). We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## I. BACKGROUND

### A. The Will of Nona G. Akard

Nona G. Akard died on December 19, 1972. Her will designated appellant James M. Cotten, a licenced attorney, as the independent executor. On January 16, 1973, Cotten was appointed and qualified as the independent executor of the Estate of Nona G. Akard (the Akard Estate). Akard's will contained language stating: "I direct my executor to retain 1/3 of the remainder of my estate and that it be used as my executor and the Trustees of the First Methodist Church of Weatherford, Texas shall agree for permanent improvements to the First Methodist Church of Weatherford, Texas."

### B. The Will of Charles A. Cook

Charles A. Cook died on April 11, 1987. His will also designated Cotten as the independent executor. On May 5, 1987, Cotten was appointed and qualified as independent executor of the Estate of Charles A. Cook (the Cook Estate). Cook's will contained language stating that "[t]he remainder of my estate is to be used upon agreement by my executor hereinafter named and Raymond Nolen and the Board of Trustees of the First United Methodist Church of Weatherford, Texas, for the erection of some type of permanent improvement to the church property as a memorial to Thelma Cook and Lorita Simmons Cook."

C.    Distributions from the Estates and Present Values

Cotten has made distributions totaling approximately $19,000 from the Akard Estate to the Church.  As of May 2006, the value of the Akard Estate was approximately $34,000 plus the unknown value of certain stocks.  With the exception of one specific bequest that is not at issue here, no distributions have been made to the Church from the remainder of the Cook Estate.  The value of the Cook Estate as of May 2006 was approximately $30,000 plus the unvalued portion of a silver coin collection.  Cotten retains the remaining assets of both estates.

D.    Trial Court Proceedings and Distributions

The Church filed motions in both estates in January 2004 requesting that the court compel Cotten to render an accounting.  In September 2007, Cotten rendered an accounting in both estates.  The Church filed objections to both accountings and sought to compel the distribution of both estates on the ground that there was no further need for continuing the estates' administrations.

Following a bench trial, the trial court approved the accountings filed by Cotten and ordered the distribution of both estates by two separate orders providing, in part:

> The court . . . finds that there is no necessity for the continued administration of the estate and orders that all of the assets of the estate be distributed to First United Methodist Church of Weatherford, by and through the Chairman of its Board of Trustees. Said distribution shall be completed within 45 days of this order.

This appeal followed.

## II.    DISCUSSION

Cotten contends that the trial court's finding that there was no continued necessity for administration of the estates is not supported by legally or factually sufficient evidence and that the trial court erred as a matter of law by ordering the distributions of the estates to the Church based on that finding.

## A.    Applicable Law Regarding Court-Ordered Distributions

Section 149B of the Texas Probate Code provides, in relevant part, as follows:

> (a) . . . [A]t any time after the expiration of two years from the date that an independent administration was created and the order appointing an independent executor was entered, a person interested in the estate may petition the county court . . . for an accounting and distribution. . . . The accounting shall include the information that the court deems necessary to determine whether any part of the estate should be distributed.
>
> (b) . . . [U]nless the court finds a continued necessity for administration of the estate, the court shall order its distribution by the independent executor to the persons entitled to the property.[2]

---

[2] Tex. Prob. Code Ann. § 149B(a)–(b) (Vernon 2003).

4

A distribution may not be made under section 149B when demand for distribution is premature,[3] the terms of the will prohibit it, or there is a continued need for administration.[4] In the absence of these recognized exceptions, an independent executor has no right to withhold a beneficiary's property or to dissipate the estate by prolonged administration with its attendant fees and expenses and the court "shall" order distribution.[5]

It is a fundamental rule that the intention of the testator is the paramount consideration and the determining factor in the interpretation of the will.[6] The testator's last will represents his unilateral, final, and ultimate legal decision.[7] Thus, his intent becomes the single most important factor in any controversy

---

[3]... *Id.* The parties do not dispute that the Church is "a person interested in the estate" under section 149B or that the Church's demand for distribution is not premature.

[4]... *Id.*; *In re Estate of Lewis*, 749 S.W.2d 927, 929–30 (Tex. App.—Texarkana 1988, writ denied); *Oldham v. Keaton*, 597 S.W.2d 938, 944 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.).

[5]... Tex. Prob. Code Ann. § 149B(b); *Lesikar v. Rappeport*, 809 S.W.2d 246, 249 (Tex. App.—Texarkana 1991, no writ) (op. on reh'g); *Estate of Lewis*, 749 S.W.2d at 931.

[6]... *Marlin v. Kelly*, 678 S.W.2d 582, 586 (Tex. App.—Houston [14th Dist.] 1984), *aff'd*, 714 S.W.2d 303 (Tex. 1986).

[7]... *Id.*

involving a will.[8]  Although a testator's intention must be gathered primarily from the terms of the will itself, any material fact or circumstance that tends to shed light on the intention of the testator may be considered where necessary to resolve a doubt in this respect.[9]  We will avoid a construction of a testamentary provision that has the effect of defeating or thwarting the intention and purpose of the testator as expressed in the will as a whole.[10]

When, as here, a will is plain in its terms and unambiguous in its meaning as to the lawful intentions of the testator, it is a legal question for the court to interpret the will and carry out the testator's wishes.[11]  It is presumed that the testator placed nothing superfluous or meaningless in his will and that he intended every part, sentence, clause, and word to have a meaning and to play a part in the disposition of his property.[12]  A provision, clause or word will be

---

[8] ... *Id.* (citing *Huffman v. Huffman*, 161 Tex. 267, 270, 339 S.W.2d 885, 888 (1960)).

[9] ... *Id.* at 586–87 (citing *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex. 1971)).

[10] ... *Id.* at 587.

[11] ... *Id.*

[12] ... *Id.*

ignored only where it is clearly illegal or clearly contrary to the general intention of the testator.[13]

The bequests at issue are dependent upon Cotten and the Trustees reaching agreement regarding the use of the estates' funds. A bequest that is dependent upon the occurrence of an event is a conditional bequest.[14] Where a conditional bequest requires the donee to perform some service or take some action as a condition to receiving the legacy, and the donee has performed or partially performed, but the actions of the executor have prevented the donee from complying or receiving the legacy, the donee is nevertheless entitled to the legacy even though it may not have literally performed the condition.[15] Otherwise, the testator's wishes may be thwarted by an executor whose actions ensure that the condition precedent will never come to pass.[16]

---

[13] ... *Id.* (citing *Peden Iron & Steel Co. v. Lockett*, 131 Tex. 287, 288–89, 115 S.W.2d 405, 406 (1938)).

[14] ... *See id.* at 589.

[15] ... *Id.*; *Lange v. Houston Bank & Trust Co.*, 194 S.W.2d 797, 801–02 (Tex. Civ. App.—1946, writ ref'd n.r.e.).

[16] ... *Marlin*, 678 S.W.2d at 587, 589–90; *Lange*, 194 S.W.2d at 801–02.

B.    Standard of Review

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it.[17] Where a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence.[18] Where such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact.[19] The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence.[20]

---

[17]... *Pharo v. Chambers County, Tex.*, 922 S.W.2d 945, 948 (Tex. 1996); *In re Estate of Rhea*, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.). Cotten contends that the trial court's orders contain findings of fact because they state that the court "finds" there is no necessity for continued administration of the estates. We disagree. The trial court ruled on the Church's request that the estates be distributed based on no continued need for their administration; it did not enter findings of fact. *See, e.g.*, *In re Guardianship of Boatsman*, 266 S.W.3d 80, 88 (Tex. App.—Fort Worth 2008, no pet.) (applying standard applicable to judgment following bench trial in which no findings of fact are filed, even though trial court signed order "finding" appellant was incapacitated and appointing guardian as requested by the Department of Aging and Disability Services).

[18]... *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Estate of Rhea*, 257 S.W.3d at 790.

[19]... *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

[20]... *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact.[21] In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.[22]

Anything more than a scintilla of evidence is legally sufficient to support the finding.[23] When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.[24] More

---

[21] ... *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960).

[22] ... *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

[23] ... *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996).

[24] ... *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.[25]

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered.[26]

C.    No Continued Necessity for Administration of the Estates

The Akard Estate has been open for over thirty-five years.  The Cook Estate has been open for over twenty years.  In that time, Cotten has filed only two accountings in each estate, one in approximately 1992 and one in 2007, both only as the result of court orders.  The accountings reveal that Cotten has never disbursed any monies to the Church from the Cook Estate (save and except a specific bequest in the amount of $2,651.40) and has disbursed only

---

[25] *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

[26] *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 664–665, 244 S.W.2d 660, 661 (1951).

approximately $19,000 from the Akard Estate. According to the 2007 accountings, there remains an asset balance of approximately $34,000 plus an unknown value of stock in the Akard Estate and an asset balance of approximately $30,000 (plus an unvalued portion of a silver coin collection, which Cotten revealed for the first time at the hearing he had at his home) in the Cook Estate.

The record further shows that Cotten has never proposed projects to the Trustees to be funded by the estates. In 1992, Dan Vogel, chairman of the Board of Trustees of the Church, requested from Cotten funds from the estates for use in reconstruction of the Church tower, for a sound system, for chimes, and for the organ. Cotten refused to fund all of the projects except the organ. In 2004, Cotten denied a Trustees' request for funds from the estates for use in constructing a porte cochere where handicapped and elderly members of the Church could enter and exit the building in bad weather. In addition, Cotten refused a request for gifts from the estates to defray the costs of burying the electrical service connection to church buildings.

We hold that there is legally and factually sufficient evidence to support findings by the trial court that the Church had performed or partially performed its obligations under the wills by presenting proposed projects to Cotten for funding by the estates; Cotten had frustrated these efforts by failing to provide

information about the assets of the estates which would assist the Church in preparing such requests and by failing to reasonably agree to requests that were consistent with the terms of the testators' bequests; Cotten had thwarted the testators' intent by failing to take affirmative steps to execute the wills within a reasonable amount of time after he was appointed independent executor; the conditions precedent of Cotten's agreement to the specific projects should be excused; and the distribution of the estates' remaining assets to the Church would fulfill the testators' intent.[27] Therefore, the trial court did not err in finding that there is no necessity for the continued administration of the estates.

Accordingly, we overrule both of Cotten's issues on appeal.

---

[27] Because the evidence supports a finding that the conditions precedent of agreement are excused as a result of Cotten's unreasonable refusal to agree to the Church's requests, the trial court has not, as Cotten contends, rewritten the wills. *See, e.g.*, *Marlin*, 678 S.W.2d at 589–90; *Lange*, 194 S.W.2d at 801–02.

### III.    CONCLUSION

The trial court's orders that the estates' remaining assets be distributed to the Church are affirmed.

PER CURIAM

PANEL:  CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DELIVERED:  November 25, 2009

13